611 A.2d 1199

**COMMONWEALTH of Pennsylvania**

**v.**

**Terrance L. KNIGHT, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 16, 1992.

Filed June 15, 1992.

Reargument Denied Aug. 25, 1992.

James R. Wilson, Asst. Public Defender, Pittsburgh, for appellant.

Thomas Farrell, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CAVANAUGH, WIEAND and HESTER, JJ.

CAVANAUGH, Judge:

Appellant raises the following two issues on appeal: (1) whether the lower court erred in failing to define the word "recklessly" when it instructed the jury on the duress defense; and (2) whether trial counsel was ineffective for not objecting to the lower court's failure to define the word "recklessly" when it instructed the jury as to the duress defense. We agree with both arguments in the respect that we believe that the word "recklessly" should have been defined for the jury when instructed on the duress defense.

Notwithstanding, we cannot rule in appellant's favor. The appellant has waived the first issue because trial counsel failed to object to the lower court's jury instruction. The appellant's second issue fails because the appellant has not been prejudiced by the inaccurate instruction. We affirm.

From our review of the record, a concise summary of the Commonwealth's case is as follows. The appellant, Terrence L. Knight, was charged with robbery for an incident which occurred on April 25, 1989. On that date, the appellant entered the Brandywine Bar, located at 737 Bradock Avenue in Allegheny County. He was wearing a red jacket over a blue and white shirt and a bandanna, and his right hand was wrapped in a towel. He initially asked the owner of the bar, Edward Gurne, for money. When Mr. Gurne refused, the appellant walked over to a customer and held the towel up to a customer's, Mr. Russell Merkel's, back. Mr. Gurne and Mr. Merkel testified that the appellant claimed to have in it a .22 caliber pistol and that he would shoot Mr. Merkel if Mr. Gurne did not give him money. Mr. Merkel told the appellant to shoot because he was an old man, and Mr. Gurne pulled a .357 revolver from behind the bar and pointed it at the appellant. The appellant said something to the effect that there were men outside, threw down a glass, and ran out the door. He was later found at 910 Talbot lying on his stomach, against the side of a house, covering his face with his arms. Despite the fact that it was a chilly night, the appellant was not wearing anything on his upper body. The police took the appellant back to the Brandywine Bar, where he was identified by Mr. Merkel. Mr. Gurne was not sure because the appellant was not wearing the shirt and jacket, although he would later make an in-court identification. The appellant's discarded jacket and shirt were found in the locality the next day by the police.

At trial, although his testimony was confused and contradictory, the appellant admitted that he was at the Brandywine Bar that night and he went there with the intention of robbing it. However, the appellant claimed that the de-

fense of duress applied in that he was forced to commit the robbery by two drug dealers to whom he owed $60 for a purchase of drugs made earlier that day. According to the appellant, the drug dealers, armed with baseball bats and a knife, found him at his girlfriend's residence and forced him to go to the Brandywine Bar, and upon threat of death, to rob it. They waited outside the bar to ensure he would follow their command. Once the appellant got into the bar, however, he claimed he had no intention of robbing it and so told Mr. Gurne. After attempting to solicit money, he testified he asked that a glass be thrown at him, explaining that he wanted it to look like a robbery for the people outside who were trying to force him to rob the bar. When no one made any motion to throw a glass at him, he grabbed a glass on the bar, threw it down on the floor, and fled. He was captured in due course. He was found guilty of robbery and sentenced following a jury trial to 5 to 10 years imprisonment.

▮▮▮ The appellant raises the following two issues on appeal: (1) whether the lower court erred in failing to define the word "recklessly" when it instructed the jury on the duress defense and (2) whether trial counsel was ineffective for not objecting to the lower court's failure to define the word "recklessly" when it instructed the jury as to the duress defense.[1] However, the Commonwealth ar-

---

**1.** The trial court gave the following jury instruction as to the duress defense:

Duress is a defense to a criminal charge. A defendant acts under duress when he is coerced into doing an act which would otherwise be criminal by the threat to use unlawful force against him which a person or reasonable firmness in his situation would have been unable to resist.

You will note that it is not enough that the force threatened actually coerced the defendant into doing the act. The force threatened must be such that a person of reasonable firmness in the same situation as a defendant would have been unable to resist it.

In determining whether a person of reasonable firmness in the defendant's situation would have been unable to resist, you should consider the seriousness of the crime which the defendant was asked to commit, the nature and severity of the force threatened, any alternative way in which the defendant might have escaped or averted that force, the age, physical condition and strength of the

gues, and we agree, that the appellant has waived the first issue by failing to object to the jury instruction at trial. The law is settled that a failure to object to a jury instruction normally waives the issue on appeal. *Commonwealth v. Hodge*, 270 Pa.Super. 232, 240 n. 8, 411 A.2d 503, 507 n. 8 (1979). However, notwithstanding, we have held that this Court may review an alleged error in a jury instruction which was not objected to at trial where it is presented in terms of ineffectiveness of counsel. *Commonwealth v. McKnight*, 307 Pa.Super. 213, 216, 453 A.2d 1, 2–3 (1982). We thus can and will address the substance of the second issue. Apparently anticipating this ruling, the appellant has couched the same underlying argument also in terms of ineffectiveness of counsel.

■ The Supreme Court has established a well-recognized test for analyzing ineffectiveness of counsel claims:

We have taken great pains to set forth the criteria that must be established when one attempts to assert the ineffectiveness of counsel. The threshold issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of the ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985). If this threshold is met, it must be established that the particular course chosen by counsel had no reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Finally, we require that the defen-

defendant, and all other factors which might bear on the reaction of a person of reasonable firmness in the same situation.

Even though a defendant acts under duress, he cannot claim the defense if he recklessly placed himself in a situation in which it was probable that he would be subjected to duress.

The Commonwealth has the burden of disproving the defense of duress. Thus, you cannot find the defendant guilty of the crime of robbery unless you are satisfied beyond a reasonable doubt that the defendant did not act under duress or that he recklessly placed himself in a situation in which it was probable that he would be subjected to duress.

dant establish how counsel's commission or omission prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). In making assertions of ineffectiveness, we also require that an offer of proof be made alleging sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective. This is so because we frown upon considering claims of ineffectiveness of counsel in a vacuum. *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981). *Commonwealth v. Durst*, 522 Pa. 2, 4–5, 559 A.2d 504, 505 (1989); *accord Commonwealth v. Jackson*, 390 Pa.Super. 639, 644–5, 569 A.2d 964, 967 (1990), *alloc. den.* 527 Pa. 623, 592 A.2d 43 (1992). Before proceeding into the appellant's analysis, we feel our analysis would be strengthened by setting forth the applicable statutory provision at length. The Duress defense, 18 Pa.C.S.A. § 309, states as follows:

§ 309. **Duress**

(a) **General rule.**—It is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

(b) **Exception.**—The defense provided by subsection (a) of this section is unavailable if the actor *recklessly* placed himself in a situation in which it was probable that he would be subjected to duress. The defense is also unavailable if he was negligent in placing himself in such a situation, whenever negligence suffices to establish culpability to the offense charged. (emphasis added).

The Appellant argues that "recklessly" as used in subsection (b) above is not understandable by a layperson without judicial guidance. Appellant argues that there are several possible meanings of the word "recklessly." One possible meaning for the term is "carelessly" or "negligently." *See Black's Law Dictionary* 1142 (rev. 5th ed. 1979). Another possible meaning is "rashly" or "irresponsibly." *See Webster's New World Dictionary of the American Language*

(2nd College ed. 1979). A third possible definition is "heedlessly, wantonly or willfully." *See Black's Law Dictionary, supra,* at 1142. Finally, appellant asserts that "recklessly" could be defined in light of a definition of "recklessly" appearing in 18 Pa.C.S.A. § 302(b)(3). Appellant asserts that given the numerous potential meanings of "recklessly," it was incumbent on the trial court to instruct the jury as to the word's meaning. Moreover, he claims that the definition that makes the best sense of the statute is the one appearing at § 302(b)(3), in light of our previous requirement that a trial court must define "recklessly" for a jury where a defendant is charged with the offense of simple assault. *See Commonwealth v. Robinson,* 284 Pa.Super. 152, 425 A.2d 748 (1980) (trial court must define elements of an offense since legal terms are not necessarily understood by laymen without judicial guidance).

"[L]egislative intent is considered the polestar of statutory construction." *Mount Laurel Racing Association v. Zoning Hearing Board, Municipality of Monroeville,* 73 Pa. Commonwealth Ct. 531, 537, 458 A.2d 1043, 1046 (1983); see also 1 Pa.C.S.A. § 1921. Thus, in order to properly ascertain the meaning of a statute, we are required to consider the intent of the Legislature. *Commonwealth v. Stewart,* 375 Pa.Super. 585, 592, 544 A.2d 1384, 1389 (1988), *alloc. den.* 520 Pa. 604, 553 A.2d 967 (1988). "Moreover, we are permitted to examine the practical consequences of a particular interpretation." *Lehigh Valley Co-op Farmers v. Commonwealth, Bureau of Labor and Industry,* 498 Pa. 521, 526, 447 A.2d 948, 950 (1982) ("[I]n ascertaining legislative intent, the practical consequences of a particular interpretation may be considered.") (citations omitted). Pursuant to 1 Pa.C.S.A. § 1922, we are to presume that the General Assembly did not "intend a result that is absurd, impossible of execution or unreasonable." Where the words of a statute are not explicit, the intention of the Legislature may be derived by such factors as, *inter alia,* the occasion and necessity for the statute, the circumstances under which it was enacted, the object to be obtained, the consequences of a particular interpretation, and

the contemporaneous legislative history. 1 Pa.C.S.A. § 1921(c).

We find that our reasoning in *Robinson, supra,* leads to the conclusion that the definition of "recklessly" should be defined for a jury and also that requiring the definition of this word is efficacious when considering the language and purpose behind the exception to the duress defense.

In *Commonwealth v. Robinson,* 284 Pa.Super. 152, 425 A.2d 748 (1980), the appellant was charged with simple assault, robbery, and conspiracy arising out of allegations that he participated in a mugging. The trial court's jury instruction regarding the elements of assault was as follows:

> The first thing you must consider when you are considering assault is whether Jerry Tannenbaum, that is the victim, suffered bodily injury. Or did someone try to inflict bodily injury on him. Bodily injury is the kind that causes one to suffer substantial pain or may [impair] your physical condition.

*Id.,* 284 Pa.Superior Ct. at 156, 425 A.2d at 750. We declared that this instruction was insufficient to permit the jurors to convict the appellant of simple assault. *Id.* We noted that the statute setting forth the offense of simple assault, 18 Pa.C.S.A. § 2701, states:

> **(a) Offense defined.**—A person is guilty of assault if he:
> (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;
> (2) negligently causes bodily injury to another with a deadly weapon; or
> (3) attempts by physical menace to put another in fear of imminent serious bodily injury.
> **(b) Grading.**—Simple assault is a misdemeanor of the second degree unless committed in a fight or scuffle entered into by mutual consent, in which case it is a misdemeanor of the third degree.

*Id.,* 284 Pa.Superior Ct. at 156–7, 425 A.2d at 750.

We found that the above instruction did not convey to the jurors the meaning of essential words appearing in the

statute. *Id.*, 284 Pa.Superior Ct. at 156, 425 A.2d at 750. For instance, we believed that the jurors could not convict under § 2701(a)(1) because the court did not define "attempt" or "intentionally, knowingly or recklessly." *Id.* We stated they could not convict under (a)(2) because the court had not defined "negligently." *Id.* We determined the jurors could not convict under (a)(3) because the court had not defined "attempt," "physical menace," or "imminent." *Id.* Thus, we reversed appellant's conviction for simple assault for failure to define the above terms because they were "legal terms whose meaning laymen do not necessarily understand without judicial guidance." *Id.* Similarly, we reversed appellant's robbery conviction in *Robinson,* declaring that it was error not to define "theft," an element of an offense. *Id.*, 284 Pa.Superior Ct. at 157, 425 A.2d at 750.

Although we are cognizant that *Robinson, supra,* was decided in the context of requiring elements of an *offense* to be defined, we find its reasoning as persuasive in the case *sub judice.* Moreover, we find this to be particularly true in light of the fact that "recklessly" as used in 18 Pa.C.S.A. § 309(b) has been defined by our legislature. Our Commonwealth's Criminal Code contains a definitional section, 18 Pa.C.S.A. § 103. It reads in pertinent part:

### § 103. Definitions

Subject to additional definitions contained in subsequent provisions of this title which are applicable to specific provisions of this part, the following words and phrases when used in this title shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:

\*      \*      \*      \*      \*      \*

"Recklessly." *The meaning specified in section 302 of this title* (relating to general requirements of culpability) and equivalent terms such as "recklessness" or "with recklessness" have the same meaning.

(emphasis added.)

As the duress defense, § 309(b), does not provide an "additional definition" of recklessly, *see supra,* the legislature

intended by the enactment of § 103 that we look to § 302 for its definition. Section 302 defines "recklessly" as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustified risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

We accordingly feel that the rationale behind *Robinson* applies equally to an element of the *defense* of duress, as it does to the elements of an *offense.* Section 103 indicates that § 302 provides the normal meaning of "recklessly" throughout the Criminal Code. Since "recklessly" in the offense of simple assault in *Robinson* is also defined in § 302,[2] we believe that the reasoning articulated in *Robinson, supra,* mandates that we find it was error for the trial court not to define "recklessly" in a jury instruction. If *Robinson* held in part that it was impossible for a layperson to understand the definition of "recklessly" as an element of an offense, we fail to see how it is more understandable where it appears as an element of the duress defense. We find this particularly to be true in light of the language of § 309(b) and its purpose.

■ Both language and purpose of § 309(b) indicate that a jury instruction as to "recklessness" is efficacious. Section 309(b) provides exceptions to the duress defense in certain instances where the actor placed himself in risk of becoming subjected to duress. The language provides two such instances where the defense does not apply. First, the defense does not apply where the actor recklessly placed

2. We note that the offense of simple assault, 18 Pa. § 2701, similar to the duress defense does not contain its own definition of "recklessly" and thus we must look to 18 Pa.C.S.A. § 302(b)(3) for its definition.

himself in a situation in which it was probable that he would be subjected to duress. § 309(b), *supra.* Second, whenever negligence suffices to establish culpability for the offense charged, the defense is unavailable if the actor negligently placed himself in a situation where duress was probable. § 309(b), *supra.* Consequently, we find persuasive the appellant's argument that "recklessly" cannot be taken to be a synonym for "negligence." Appellant has been found guilty of robbery, a crime in which negligence does not suffice to establish culpability. At the very least, an instruction should make it clear that the definition of "recklessly" is not synonymous with the definition of "negligence."

Moreover, despite the lack of a legislative history for this provision, our Criminal Code has been adopted from the Model Penal Code, which has extensive commentary as to the Duress defense. The Duress Defense in this Commonwealth is based on § 209 of the Model Penal Code. Under the Model Penal Code, "recklessly" was meant to have a particular meaning that was obviously more than negligence:

Subsection (2) accepts the view that there should be no exculpation if the actor recklessly placed himself in the situation in which it was probable that he would be subjected to duress. Though this provision may have the effect of sanctioning conviction of a crime of purpose when the actor's culpability was limited to recklessness, we think the substitution is permissible in view of the exceptional nature of the defense. The provision will have its main room for operation in the case of persons who connect themselves with criminal activities, in which case too fine a line need not be drawn. *When there is no more than negligence, however, on the actor's part in placing himself in a situation where duress was probable, we follow the normal pattern of the Code. The defense is excluded only on a charge which negligence suffices to establish culpability ... The difference between inadvertence and the conscious risk creation*

*involved in recklessness appears to justify discriminating in this way.*

Model Penal Code, Comments, Tentative Draft 10, at 8 (emphasis added).

It is pertinent to note that the Model Penal Code emphasizes conscious risk creation. We also note that "[s]tatutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform laws of those states which enact them." 1 Pa.C.S.A. § 1927.

We further believe that the need for an instruction as to the meaning of the word "recklessly" is also supported by a reflection on the duress defense made by Sheldon S. Toll, the Reporter for the Pennsylvania Crimes Code, only one year after our Criminal Code was revised to reflect the Model Penal Code. Reporter Toll opined in reference to subsection (b):

The provision set forth in subsection (b) is also new. Its main application is with regard to persons who connect themselves with criminal activity and it states the rule that if the defendant had *full opportunity to avoid coercion,* the defense is not available.

Sheldon S. Toll, *A Practitioner's Guide to Defences under the New Pennsylvania Crime Codes,* 12 Duq.L.Rev. 849, 857 (1974) (emphasis added).

■ The trial court's holding leaves the jury adrift on the seas of uncertainty, depriving them of a rudder which will inform their decision instead of their own potentially idiosyncratic conception of the word. A trial court instruction is especially important given the context of when a jury must often decide whether a defendant "recklessly" placed himself in a situation where duress was probable. As both the Model Penal Code Commentary and Reporter Toll note, the jury will have to consider whether subsection (b) applies where a defendant is connected with some type of criminal activity. Left to their own devices, there is the potential that the jury will assume that *any* criminal activity constitutes recklessness needed to obviate the defense, despite

the fact that it is clear that more than negligence is needed in the case *sub judice*. It is incumbent on a trial court in a jury instruction of duress to make clear that a criminal defendant has to consciously create the risk of becoming subject to duress. We conclude that it is incumbent on a trial court to define "recklessly" when instructing a jury as to the exception to the duress defense. We further conclude that such an instruction should track the language in § 302.

█ Let us assume that the facts are as claimed by the appellant. These alleged facts illustrate graphically the importance of fleshing out what "recklessly" means for the jury. The appellant asserts the following. He bought $60 worth of drugs, but did not pay the sellers. The sellers later that same day threatened that they would beat him to death and throw him into a river if they were not paid immediately. They then took him to a local bar, with the understanding that he would attain the $60 by robbing that bar or pay with his life. Appellant entered the bar and proceeded to attempt to rob it.

Assuming these facts to be true, the case is very close to a classic case of duress, where quite arguably the appellant did not place himself in the sort of situation where this sort of duress would be probable. The appellant under these facts does not appear to be a hardened criminal with full opportunity to avoid coercion, but only some poor unfortunate who bought a one-time, small amount of drugs on credit and was forced to do something totally unexpected to pay for the drugs the same day. It would appear under these facts that appellant was nothing more than negligent, if even that. It would be hard to find a more sympathetic criminal defendant (assuming these were the only facts). A definition of "recklessly" would assist a defendant in similar circumstances to avoid a jury's distaste for criminal activity (drug use).

However, upon examination of all the facts in the case *sub judice*, the trial evidence did not present a clear cut case of duress, as the appellant indicates, but presented the

jury with a defendant with obvious contradictions in his story. There is substantially nothing more than the appellant's testimony backing his tale, and this testimony has the appearance of being contrived. Appellant could not recall the names of the two drug dealers who threatened him, although he asserted that everyone in the projects knows them. It is true that the bartender, Edward Gurne, and his patron, Russell Merkel, testified that after Mr. Gurne pulled a .357 Magnum on the appellant, the appellant fled stating something that may be construed to support his story. Mr. Merkel testified that appellant as he fled said something to the effect that he had somebody outside and to throw a glass down and break it. Mr. Gurne confirmed that appellant said something about throwing down a glass. Both men appear to have testified that whatever it was that appellant was saying, they thought it was odd and could not understand it. Moreover, the appellant specifically testified that after he said it was a stick up, but before the bartender pulled his gun, he told the bartender it wasn't a stick up and that he was sorry. Neither Mr. Gurne nor Mr. Merkel testified to remembering anything of the sort.

Although appellant's paramour testified that appellant left her apartment in the company of two black men, she did not say whether they were drug dealers and could not remember their names. She did not verify appellant's testimony that they came to the door of her apartment with a knife and a baseball bat. Despite the appellant's claim that he told the arresting officers he was forced to commit the crime, both officers testified on rebuttal that they had never heard this story before. To the contrary, Trooper Christie testified that appellant had told him that the crime resulted because he was shooting up. Mr. Gurne testified that when he identified the defendant after the attempted robbery, the appellant was half-naked in the back of a police car moving back and forth, chanting. Moreover, it came out at trial that counsel had filed, with appellant's knowledge and approval, an alibi defense to this action. However, at trial appellant maintained he had lied to his counsel about having

an alibi because he thought no one would believe that he had been forced to commit a crime. Similarly, he lied to the police when captured claiming he was only wearing pants and sneakers that night by choice, despite the fact it was a rather brisk evening. However, he tacitly admitted at trial that he was wearing the shirt and jacket identified as his, but shed them to prevent identification. He admitted lying to the police about wearing the same because he thought no one would believe his story.

Thus, although we find that the appellant has established the first two prongs of the ineffectiveness test, he has not established that he was prejudiced because a correct duress instruction would not have led to a different verdict. *See, Commonwealth v. Humphreys*, 367 Pa.Super. 154, 163–4, 532 A.2d 836, 840 (1987) *alloc. den.*, 518 Pa. 624, 541 A.2d 1136 (1987) (holding that even though the court could find no reasonable basis for trial counsel's failure to object to a jury charge, reversal not mandated under *Robinson* unless prejudice established). There exists no reasonable probability that had a correct instruction been made, the verdict would have been different. *See, e.g., Commonwealth v. Weisman*, 401 Pa.Super. 62, 584 A.2d 980, 985 (1990), *appeal den.*, 528 Pa. 644, 600 A.2d 195 (1991) (error is harmless where the impact of the error is so slight that it can be concluded beyond a reasonable doubt that the error could not have contributed to the verdict); *Commonwealth v. Pierce*, 515 Pa. 153, 163, 527 A.2d 973, 977 (1987). Consequently, the verdict must be affirmed.

Judgment of sentence affirmed.

WIEAND, J., files a concurring statement.

WIEAND, Judge, concurring:

I agree with the majority's conclusion that a jury instruction on the defense of duress should have included a definition of the term "recklessly" as contained in the Crimes Code at 18 Pa.C.S. § 302. In order to prevail upon a claim of ineffective assistance of counsel, however, appellant was

602

required to demonstrate that counsel's failure to object to the erroneous jury charge was unreasonable and so egregious as to have deprived him of a fair trial, i.e., a trial whose result was reliable. See: *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because, in my judgment, appellant failed to demonstrate such prejudice, I agree that the judgment of sentence should be affirmed.