612 A.2d 1037

**COMMONWEALTH of Pennsylvania,**

**v.**

**Cyd Charrise BERGER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 8, 1992.

Filed July 22, 1992.

Reargument Denied Sept. 18, 1992.

474

Thomas Livingston, Pittsburgh, for appellant.

Maria V. Copetas, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CIRILLO, FORD ELLIOTT and BROSKY, JJ.

BROSKY, Judge.

Cyd Charrise Berger appeals from the July 30, 1991 trial court order denying her petition under the Post Conviction Hearing Act ("PCHA"), 42 Pa.C.S. §§ 9541–9551 (Repealed April 13, 1988).  In two separate informations she was charged with the first-degree murder of Robert Karcz, receiving stolen property, theft, conspiracy, robbery, credit card theft and hindering apprehension or prosecution.  On June 12, 1981 she retained Claudia Sharon, Esquire, and a motion to suppress statements, that were allegedly the product of duress and coercion and that involved a violation of her *Miranda* rights, was filed.  On June 16, her motion to sever her case from that of her co-defendants was granted.  At the conclusion of a September 9 and 10, 1981 suppression hearing, before the Honorable Samuel Strauss of the Court of Common Pleas of Allegheny County, appellant's motion to suppress was withdrawn.  On October 15, 1981 the charges of receiving stolen property and hindering apprehension or prosecution were dismissed.

At Allegheny County Criminal No. CC8008057 of 1980 appellant was tried by a jury and on October 22, 1981 convicted of first-degree murder, robbery, credit card theft and conspiracy.  On November 2, 1981, regarding Allegheny County Criminal No. CC8008137 of 1980, she pled guilty to theft by unlawful taking and conspiracy.[1]  Appellant's post-trial motions were denied on November 15, 1983.  On November 22, 1983 appellant was sentenced to a mandatory term of life imprisonment regarding the first-degree murder conviction, a two and one-half to five year concurrent term of imprisonment regarding the theft by unlawful

---

1. Appellant is not presently challenging the validity of her guilty plea.

taking conviction and an identical sentence regarding the conspiracy conviction. Appellant was separately sentenced regarding the robbery conviction; she received a ten to twenty year term of imprisonment.

On December 8, 1983 the office of the Allegheny County Public Defender was appointed to represent appellant. An appeal was filed to this Court on December 21, 1983. *Commonwealth v. Berger*, 355 Pa.Super. 630, 509 A.2d 1318 (1986). On February 18, 1986 a panel of this Court, in a memorandum opinion, affirmed appellant's judgment of sentence. Appellant's subsequent petition for allowance of appeal to our Supreme Court was denied. *Commonwealth v. Berger* (No. 136 W.D.1986, filed November 13, 1986).

On July 6, 1987 appellant filed a *pro se* PCHA petition. The Public Defender's office was permitted to withdraw as counsel and on October 15, 1987 Thomas Livingston, Esquire, who is appellant's current counsel, was appointed to represent appellant. On August 20, 1990 counsel filed a supplement to appellant's PCHA petition. On July 24, 1991 the trial court conducted a PCHA hearing and on July 30, 1991 the Honorable Donna Jo McDaniel, of the Court of Common Pleas of Allegheny County, denied appellant's PCHA petition. Appellant then filed the instant appeal.

Appellant's statement of questions involved is as follows.

1. After eliciting evidence at trial which plainly gives the jury a "possible basis" for finding the affirmative defense of duress under 18 Pa.C.S. § 309(a), whether trial counsel was ineffective in failing to place the duress defense before the jury—through requested points for charge, closing argument and objections to the court's final jury instructions—in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and in violation of Article I, Section 9 of the Pennsylvania Constitution?

2. Where the evidence at trial plainly gives the jury a "possible basis" for finding the affirmative defense of duress under 18 Pa.C.S. § 309(a), whether the failure of trial counsel to place the duress defense before the jury

deprives the appellant of a fair jury trial and due process, in violation of the Fourteenth Amendment to the United States Constitution, and in violation of Article I, Sections 6 and 9 of the Pennsylvania Constitution?

3. Whether the failure of counsel on direct appeal to detect, present and argue the foregoing ineffectiveness and fair jury trial/due process claims is also an instance of ineffectiveness, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and in violation of Article I, Section 9 of the Pennsylvania Constitution?

4. In reviewing the foregoing issues, whenever the lower court errs by failing to apply to [Sic] correct standard of review, i.e., by failing to ask whether some portion of the evidence gives the jury a "possible basis" for finding the § 309(a) duress defense?

Appellant's Brief at 3. The duress of which appellant speaks is that which was allegedly exerted upon her by one of her co-defendants, Dwayne Hicks. In this appeal appellant is averring that Hicks coerced her to participate in the murder of Robert Karcz. We affirm the order of the trial court.

In order to be eligible for relief under the PCHA, a person must prove, pursuant to 42 Pa.C.S. § 9543 (Repealed),

(3) That his conviction or sentence resulted from one or more of the following reasons:

. . . . .

(vi) The denial of his constitutional right to representation by competent counsel.

. . . . .

(xii) The abridgement in any other way of any right guaranteed by the constitutions or laws of this Commonwealth or of the United States, including a right that was not recognized as existing at the time of the trial if the constitution requires retrospective application of that right.

478

Our scope of review, when examining a post-conviction court's grant or denial of relief is limited to determining whether the court's findings were supported by the record and the court's order is otherwise free of legal error. *Commonwealth v. McClucas,* 378 Pa.Super. 202, 548 A.2d 573 (1988).[2] The findings of the post-conviction court will not be disturbed unless they have no support in the record. *Id.*

■ Ineffectiveness is established if the issue underlying the claim of ineffectiveness has arguable merit. *Commonwealth v. Smith,* 380 Pa.Super. 619, 552 A.2d 1053 (1988). Next, if appellant's claim does have arguable merit, we must determine whether counsel's failure to pursue the matter had some reasonable basis designed to serve the interests of his client. *Id.* Finally, if the record reveals that counsel was ineffective, it must be determined whether appellant has demonstrated that counsel's ineffectiveness so prejudiced the appellant's case that it is likely that the result would reasonably have been different absent the errors. *Commonwealth v. Tyson,* 363 Pa.Super. 380, 526 A.2d 395 (1987), appeal denied at 518 Pa. 618, 541 A.2d 745 (1988).

■ The burden of establishing ineffective assistance of counsel rests upon the appellant since counsel's representation is presumed to be effective. *Commonwealth v. Jones,* 389 Pa.Super. 159, 566 A.2d 893 (1989). Appellant must demonstrate that counsel's omission or commission was arguably ineffective and the likelihood that appellant was prejudiced as a result thereof. *Id.*

18 Pa.C.S. § 309 states,

(a) General rule.—It is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

2. This case was decided under the PCHA.

(b) Exception.—The defense provided by subsection (a) of this section is unavailable if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress. The defense is also unavailable if he was negligent in placing himself in such a situation, whenever negligence suffices to establish culpability for the offense charged.

The evidence adduced at appellant's trial is as follows. On October 27, 1980 the Pittsburgh Police found the body of Robert Karcz in a wooded area in the Oakland–Squirrel Hill section of Pittsburgh; he had been strangled. On November 8, 1980 appellant, aware that the police were searching for her, co-defendant Dwayne Hicks and co-defendant Tracy Saunders, turned herself in to Pittsburgh Police detectives. She averred to the police that she was an innocent bystander to the murder of Robert Karcz and that she simply helped Hicks load the victim's body into an automobile for disposal in the wooded area in which it was found by police.

Appellant began dating Hicks in 1976; she was working at Equibank in Pittsburgh. She testified that soon after moving in with Hicks he coerced her into working as a street prostitute; she testified that she continued to work, as a prostitute, due to beatings administered by Hicks and his threats of further beatings. Hicks moved from Pittsburgh and spent eight months in the United States Marine Corps. When he returned, appellant, who testified that she believed Hicks' nature had changed, again moved in with him. She was again beaten, and, forced to work as a prostitute. Subsequently, Saunders moved in with appellant and Hicks (Hicks now had two lovers residing with him). The trio moved to California but appellant returned, alone, to Pittsburgh. Hicks and Saunders returned to Pittsburgh and, after a telephone call from Hicks, appellant again moved in with the couple, was beaten by Hicks, and, continued to prostitute herself. Appellant testified that Hicks stated that he would kill her if she left him. Appellant also testified that Hicks threatened to harm appellant's

children, who lived with appellant's parents. Hicks also beat Saunders and eventually coerced her to work as a prostitute.

In the fall of 1980 Hicks became aware of an arrest warrant that had been issued for him regarding an unrelated burglary charge. Appellant told Hicks that he should leave the Pittsburgh area rather than turn himself in to the police. N.T., October 15, 1981, at 367. Hicks decided that he, appellant and Saunders would need a car and money in order to flee Pittsburgh. Saunders, who was working as a prostitute, agreed to find a "customer" and bring him back to the trio's residence so that Hicks could rob him and take possession of his car. *Id.* Before Saunders left the apartment appellant told her that Hicks intended to kill the "customer." *Id.* at 368. Hicks told appellant that stabbing the customer would leave deposits of his blood in the apartment; appellant suggested that Hicks strangle the customer. N.T., October 20, 1981, at 179–180. Appellant's suggestion was made three and one-half hours before the killing.

Hicks and Saunders went to the Liberty Avenue section, recognized as the "red-light" district, of downtown Pittsburgh to find a victim; appellant remained at the apartment. Hicks purchased handcuffs and a pellet gun and returned to the apartment. He tested the handcuffs and fired the pellet gun in the apartment; appellant cautioned him not to fire it again since a neighbor could possibly call the police. *Id.* at 183. Saunders brought the victim back to the apartment and had him disrobe. Hicks entered the room, handcuffed the victim and strangled him. Appellant and Saunders were in another room; appellant informed Saunders that Hicks was strangling the victim. A bucket of water sat in the room where the strangling occurred. Saunders asked what the bucket was to be used for; appellant replied that the victim's head would be placed in the bucket and that he would be drowned. N.T., October 15, 1981, at 383–384. After the victim was deceased Saunders asked appellant why the victim's skin had turned "dark"; appellant replied that, "that is the color that you turn when

you are dead." *Id.* at 385–86. Hicks and appellant wrapped the victim's body in a blanket; Saunders testified that she could not bring herself to assist them. Appellant directed Hicks to remove the handcuffs from the victim's body since the trio's collective fingerprints may have been inadvertently placed upon the handcuffs. *Id.* at 386. The victim's wallet, car keys and credit cards were taken. Hicks took the victim's body to a wooded area and left it. Appellant and Saunders cleaned and straightened the apartment and rummaged through the victim's personal effects. When Hicks returned to the apartment he told the women that he deposited the victim's body in Pittsburgh's Schenley Park. Appellant told Hicks that he should have "threw [Sic] it [the body] in the river" where it would remain undetected for a longer period of time. N.T., October 20, 1981, at 196. Appellant suggested that the trio not leave Pittsburgh until the following day so that they could utilize the victim's credit cards.

The next day the trio purchased items with the credit card; appellant sat alone in the victim's car during one of the purchases at a shopping mall. A period of time later Hicks entrusted appellant with the car and fifty dollars and directed her to fill the car's gasoline tank. Unaccompanied, she conducted several errands with the car. Hicks and Saunders left Pittsburgh that evening; appellant stayed alone at the apartment. The two returned a day or two later and Hicks stated to appellant that she could remain in Pittsburgh or leave with them; she chose to accompany them to Atlanta, Georgia. After three days in Atlanta, more beatings from Hicks and work as a prostitute appellant returned to Pittsburgh and turned herself in to police. She then participated in a police operation that culminated in the capture of Hicks.

Although appellant has framed her argument in four separate issues they are merely a repetition of only one issue: Whether her trial counsel was ineffective for failing to assert a duress defense ("through requested points for charge, closing argument and objections to the [trial] court's final jury instructions"). Appellant's Brief at 3.

■ Our Court has held that duress is a defense to all criminal activity except first degree murder. *Commonwealth v. Morningwake*, 407 Pa.Super. 129, 595 A.2d 158 (1991), *alloc. den.* at 600 A.2d 535. The Court stated,

> The defense of duress is generally available to a defendant charged with any crime except one which involves taking the life of an innocent person. The three elements which must be shown to establish a duress defense are: (a) an immediate or imminent threat of death or serious bodily injury; (2) a well-grounded or reasonable fear that the threat will be carried out; and (3) no reasonable opportunity to escape the threatened harm except by committing the criminal act. The law cannot permit a party who places himself [or herself] in harms way by engaging in felonious criminal activity to exculpate himself [or herself] by claiming the taking of an innocent life was necessary because of duress, even if his [or her] own life was thereby threatened.
>
> Duress must not be confused with justification. Justification entails taking the life of a person who is threatening the life of the defendant or another person to prevent oneself or the other person from being killed. Duress entails the killing of an innocent person under threat of being killed. The law of nature permits a person to kill one who is to take his life and acting in self-defense; it does not permit a person to take the life of an innocent person to prevent his own possible demise by the hand of the person making the threat. For lesser crimes than murder, duress is allowable because, on balance, saving one's own life, by committing a crime not entailing the death of another, has a higher value in society than avoiding the commission of that crime. One, however, may not be permitted to kill another person to save one's own life, since society places an equal value on both lives.

*Id.* 407 Pa.Super. at 140–41, 595 A.2d at 164.

However, our Supreme Court, in *Commonwealth v. Pelzer*, —— Pa. ——, 612 A.2d 407 (1992), while not addressing

the issue of whether a defendant accused of first-degree murder may avail himself of the duress defense, impliedly stated that such a defendant *may* avail himself of said defense under appropriate factual circumstances. In *Pelzer*, the defendant, who was charged with first-degree murder, alleged that the trial court improperly refused to give a jury instruction regarding the duress defense. The trial court, in refusing to give the charge, stated that 18 Pa.C.S. § 309(b) applied as a matter of law to preclude the use of the duress defense;[3] our Supreme Court agreed. *Id.* The Court held that, pursuant to the facts in *Pelzer*, the defendant recklessly placed himself in a situation in which it was probable that he would be subjected to duress; hence, pursuant to § 309(b), he could not avail himself of the duress defense. *Id.* Our Supreme Court did not find that § 309 was unavailable to a defendant charged with first-degree murder. It applied the statute but found that pursuant to a section of the statute the duress defense was unavailable to that defendant. Therefore, it appears that our Supreme Court has impliedly overruled our Court's pronouncement in *Commonwealth v. Morningwake, supra,* regarding the duress defense, and that the duress defense could have been, under appropriate factual circumstances, available to the instant appellant. *Commonwealth v. Pelzer, supra.*

Our review of the facts adduced at trial compels us to conclude that appellant recklessly placed herself in a situation in which it was probable that she would be subjected to duress. 18 Pa.C.S. § 309(b). Appellant had lived with Hicks intermittently for a period of four years prior to the murder of the victim. She left him twice and chose both times to move back in with him. The day after the murder she, unaccompanied, drove the victim's car around the city.

---

**3.** As stated, *supra,* § 309(b) provides that the duress defense is unavailable if, *inter alia,* "the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress." *Id.* As mentioned, *supra,* 18 Pa.C.S. § 309 is the criminal statute that defines the duress defense, and, details when the defense is unavailable.

Hicks gave appellant the option of choosing to stay in Pittsburgh rather than accompanying himself and Saunders to Georgia; appellant chose to accompany the two to Georgia. While appellant knew hours in advance of the murder that Hicks intended to kill someone, and she was left alone in the apartment when Hicks and Saunders searched for a victim in another part of Pittsburgh, appellant did not flee the apartment and/or attempt to extricate herself from the conspiracy to kill one of Saunders' "customers." While Hicks left the apartment, to dispose of the victim's body, appellant remained at the apartment and awaited Hicks' return. All of the aforementioned examples clearly indicate that appellant had numerous opportunities to sever her ties with Hicks both prior and subsequent to the spawning of the scheme to murder the victim. At the very least she recklessly placed herself in a situation (the relationship with Hicks, and, the conspiracy, from its infancy, with Hicks and Saunders) in which it was probable that she would be subjected to duress. If appellant had physically removed herself from the situation it would have been impossible for Hicks to have subjected her to the type of duress that would have caused her to participate in the murder of the victim. Therefore, we find, pursuant to 18 Pa.C.S. § 309(b), that appellant was not entitled to assert a duress defense. *Commonwealth v. Pelzer, supra.* Since the defense was unavailable appellant's trial counsel was not ineffective for failing to assert it at trial. Accordingly, the trial court properly denied appellant's PCHA petition.

■ We wish to note that the evidence adduced at trial indicated that appellant's actions and omissions prior to, during and subsequent to the instant murder indicated that her involvement in the crime was more elaborate than the mere action of recklessly placing of herself in a situation in which it was probable that she would be subjected to duress. Appellant was involved from the inception of the instant plan to commit a murder. It was she, who, after learning of the unrelated burglary arrest warrant for Hicks, advised Hicks to flee the Pittsburgh area rather than

turn himself in to the police; she suggested that Hicks strangle rather than stab the victim; she warned Hicks not to re-fire the pellet gun in the apartment since the noise could have caused a neighbor to summon the police; she directed Hicks to remove the handcuffs from the victim's body since the handcuffs may have contained the defendant's fingerprints; she advised Hicks that "the river" would have been a preferable location to dispose of the victim's body; and, she suggested that the trio remain in Pittsburgh for one more day so that they could utilize the victim's credit cards. Appellant's actions went far beyond what could have been expected from an individual responding to duress; they were illustrative of acts of limited leadership in the murder scheme. Hence, appellant's assertion that she was coerced into participating in the instant murder was clearly not supported by the evidence adduced at trial.

In conclusion, we affirm the trial court's order denying appellant's PCHA petition.

Order affirmed.