809 A.2d 256

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Richard DEMARCO, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 14, 2002.

Decided Oct. 23, 2002.

264

Brian R. Germano, Stroudsburg, for Richard DeMarco.

Bernard Ashley Anderson, Mark Peter Pazuhanich, Stroudsburg, for Com.

Before ZAPPALA, C.J., CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, JJ.

## *OPINION OF THE COURT*

Justice NIGRO.

We granted allowance of appeal in the instant case to review whether the Court of Common Pleas of Monroe County committed reversible error during the trial of Appellant Richard DeMarco by refusing to charge the jury on the defense of duress. For the reasons that follow, we find that the trial court did err, and therefore, vacate Appellant's judgment of sentence and remand the case to the trial court for a new trial.

On February 16, 1998, Frank Larwa called the Pocono Mountain Regional Police Department to report that Salvatore Zarcone was at his home in Blakeslee, Pennsylvania, and had damaged his two cars. Shortly after Larwa's phone call, Officer Martin Reynolds arrived at Larwa's home and observed that two cars in the driveway next to the home were damaged. Officer Reynolds spoke with Larwa and Appellant, who were the only people present in the home.[1] Larwa told Officer Reynolds that Zarcone had appeared at his home and when he refused to open the door to allow Zarcone inside, Zarcone threatened to injure him and vandalized his two cars. Appellant corroborated Larwa's statements. Officer Reynolds asked Larwa and Appellant to each make a written statement

---

1. Appellant had been living with his sister Donna DeMarco and her boyfriend Larwa for some time before the alleged events of February 16, 1998. Appellant did not move out of the home until approximately August 12, 1998.

regarding their allegations and gave them forms on which to make those statements.

Officer Reynolds had to leave the home before Larwa and Appellant wrote their statements but he returned later that day to pick up the completed statements. Both Larwa's and Appellant's signed written statements substantiated what they had orally told Officer Reynolds earlier that day. Based on Larwa's and Appellant's allegations, Officer Reynolds filed a charge of terroristic threats against Zarcone. On April 9, 1998, a preliminary hearing was held concerning that charge. Appellant testified during the preliminary hearing in a manner consistent with his previous statements to Officer Reynolds. Based on the evidence presented at the preliminary hearing, the trial court determined that there was sufficient evidence to proceed to trial.

On November 10, 1998, a trial was held on the terroristic threats charge against Zarcone. During the trial, Zarcone called Appellant to testify regarding the statements he made to Officer Reynolds and the testimony he gave during the preliminary hearing. Instead of confirming his prior statements and testimony, however, Appellant testified that his statements and testimony were not true accounts of what happened on February 16. According to Appellant's testimony at trial, Zarcone was not at Larwa's house on February 16 and, in fact, Larwa had vandalized his cars himself. Appellant also testified that Larwa had coerced him into telling the false story both to Officer Reynolds and at the preliminary hearing. The jury subsequently acquitted Zarcone of the terroristic threats charge.

Based on the inconsistencies between his earlier statements and his testimony at Zarcone's trial, Appellant was charged with two counts of perjury, 18 Pa.C.S. § 4902, two counts of false swearing, 18 Pa C.S. § 4903(a)(1),[2] one count of unsworn

2. The Commonwealth charged Appellant with two counts of perjury and two counts of false swearing because, according to the Commonwealth, Appellant either committed one count of perjury and one count of false swearing at Zarcone's trial or alternatively one count of perjury and one count of false swearing at the preliminary hearing.

falsification to authorities, 18 Pa.C.S. § 4904(a)(1), and one count of false reports to law enforcement, 18 Pa.C.S. § 4906(b)(1).[3] Prior to trial, Appellant obtained a report from a medical expert in which the expert found that Appellant was coerced by Larwa into telling the false story to Officer Reynolds and at the preliminary hearing. Based on its receipt of the report, which Appellant planned to admit into evidence at his trial, on September 13, 1999, the day before Appellant's trial, the Commonwealth filed a motion in limine requesting that the trial court preclude Appellant from presenting any evidence regarding the duress defense provided for in 18 Pa.C.S. § 309. According to Section 309, the duress defense applies in the following circumstances:

> (a) General Rule.—It is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

> (b) Exception.—The defense provided by subsection (a) of this section is unavailable if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress. The defense is also unavailable if he was negligent in placing himself in such a situation, whenever negligence suffices to establish culpability for the offense charged.

P.L. 1482, No. 334, § 1, Dec. 6, 1972 (effective June 6, 1973), *codified as amended,* 18 Pa.C.S. § 309 (2002). Alternatively, the Commonwealth argued that if the trial court allowed Appellant to present evidence of the duress defense, the trial court should exclude evidence from any medical experts regarding Appellant's mental condition.

---

**3.** Appellant was also charged with receipt of stolen property, 18 Pa.C.S. § 3925, and theft by unlawful taking or disposition, 18 Pa.C.S. § 3921(a), based on Larwa's claims that Appellant had taken $3,000 from him. However, the trial court dismissed the charge of receipt of stolen property and Appellant was acquitted of theft by unlawful taking or disposition.

On the morning of the first day of Appellant's trial, the trial court held a pretrial conference on the Commonwealth's motion in limine. The trial court ruled that Appellant could present evidence of the duress defense but that Appellant could not present any evidence from medical experts regarding his mental condition because, according to the trial court, such evidence would improperly bolster Appellant's credibility. Consequently, on the first day of his trial, Appellant argued that although he had made false statements to Officer Reynolds and at the preliminary hearing, Larwa had coerced him into making those statements. In support of his argument, Appellant presented evidence of his own testimony during Zarcone's trial in which he stated that Larwa had forced him to tell the false story by shooting him with a B.B. Gun and choking him, as well as Larwa's testimony at Zarcone's trial in which Larwa stated, "[Appellant's] brain doesn't work like yours and mine." N.T., 9/14/99, at 45.

In addition, Appellant presented evidence from his mother, Charmaine Mesa. Mesa testified that Appellant's father hit Appellant in the head when he was just nine months old and, as a result, Appellant underwent several operations, and ultimately, had a metal plate placed in his head. According to Mesa, Appellant continues to suffer from severe headaches and seizures. Mesa also testified that Appellant's school informed her that Appellant is borderline mentally retarded and will not be able to intellectually develop above approximately a third-grade level. Furthermore, Mesa testified that both Appellant and his wife, Tracey Zook, notified her that Larwa was threatening Appellant. Mesa explained that she notified her local police in Philadelphia about the threats, but was told by the police that they could not help Appellant because he was outside of their jurisdiction.

Zook also testified at Appellant's trial. She confirmed that Appellant receives social security checks because he is mentally disabled. Zook further testified that she was living at Larwa's home with Appellant when Larwa coerced Appellant into falsely accusing Zarcone. According to Zook, she heard Larwa telling Appellant what he should say in court and

threatening to either kill Appellant or take away his social security checks if he did not testify as rehearsed.

At the end of the first day of trial, the Commonwealth made a motion requesting that the trial court exclude any additional evidence regarding the duress defense and refrain from instructing the jury about that defense. The next morning, before the start of the second day of the trial, the trial court granted the Commonwealth's motion. In support of its ruling, the trial court initially noted that the duress defense is provided for in 18 Pa.C.S. § 309. Nevertheless, the trial court then determined that based on the Superior Court's decision in *Commonwealth v. Berger,* 417 Pa.Super. 473, 612 A.2d 1037 (1992), in order to establish the duress defense, the evidence must show that: (1) the defendant was subject to a present and impending threat of death or serious bodily injury; (2) the defendant had a reasonable fear that the threatened harm would be made against him; and (3) the defendant had no reasonable opportunity to escape the threatened harm except by committing the criminal act. *Id.* at 1041–42.

Based upon its review of the evidence introduced on the first day of trial, the trial court found that the evidence was insufficient to support two of the three necessary elements set forth in *Berger,* namely, that Appellant was subject to a present and impending threat of death or serious bodily injury, and that he did not have a reasonable opportunity to escape the threatened harm except by committing the criminal offenses.[4] Therefore, the trial court concluded that the duress defense was not a viable defense in the instant case. Moreover, the trial court determined that because the evidence

---

4. According to the trial court, the evidence established that Appellant was not subject to a present and impending threat of serious harm by Larwa because Appellant had the opportunity to notify either Officer Reynolds or one of the many law enforcement officers present at the preliminary hearing about the alleged coercion by Larwa, but he failed to do so. In addition, the trial court found that Appellant could have escaped Larwa's allegedly coercive conduct by moving out of Larwa's residence and going to live with friends or family. Indeed, the trial court found it notable that in August 1998, Appellant did move to Lancaster, Pennsylvania, nearly two hundred miles away from Larwa's home in Blakeslee, and he did not notify any authorities about the alleged threats by Larwa until Zarcone's trial in November 1998.

indicated that by living with Larwa, Appellant recklessly placed himself in a situation where it was likely that he would be subject to duress, even if the evidence supported the duress defense, Appellant was not entitled to avail himself of the defense in light of the exception in 18 Pa.C.S. § 309(b).

Given its ruling on the Commonwealth's motion in limine, the trial court precluded Appellant from offering any additional evidence concerning the duress defense and refused, despite Appellant's requests, to instruct the jury regarding the defense. Indeed, in its charge to the jury, the trial court instructed, "as a matter of law, there is no legal application of duress that would apply in this particular case." N.T., 9/15/99, at 109. Following deliberations, the jury convicted Appellant of one count each of perjury, false swearing, unsworn falsification to authorities, and false reports to law enforcement. The trial court subsequently sentenced Appellant to one to two years imprisonment for his perjury conviction, two concurrent terms of eleven and one-half to twenty-three months imprisonment for his false swearing and unsworn falsification to authorities convictions, and another concurrent term of six to twelve months imprisonment for his false reports to law enforcement conviction.

Appellant appealed from his judgment of sentence to the Superior Court arguing, among other things, that the trial court erred in failing to instruct the jury on the duress defense. The Superior Court agreed with the trial court that Appellant was required to offer evidence of the three elements set forth in *Berger* in order to establish the duress defense. The Superior Court then affirmed the trial court's finding that because the evidence failed to satisfy two of those three elements, the duress defense was not proper in the instant case and Appellant was not entitled to a jury charge regarding the defense.[5] Appellant subsequently filed a petition for allowance of appeal to this Court, and we granted allocatur to

5. The Superior Court also agreed with the trial court that the evidence indicated that Appellant recklessly placed himself in a situation where he would be subject to duress and therefore, even if the evidence established the duress defense, the defense was not available to Appellant based on the exception in Section 309(b).

consider whether the lower courts properly determined that Appellant was not entitled to a jury charge on the duress defense.

In deciding whether a trial court erred in refusing to give a jury instruction, we must determine whether the court abused its discretion or committed an error of law. *Von der Heide v. Commonwealth, Dep't of Transp.*, 553 Pa. 120, 718 A.2d 286, 288 (1998). Where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record.[6] *Commonwealth v. Lightfoot*, 538 Pa. 350, 648 A.2d 761, 764 (1994). When there is evidence to support the defense, it is "for the trier of fact to pass upon that evidence and improper for the trial judge to exclude such consideration by refusing the charge." *Id.* (internal quote and citations omitted).

As noted above, both lower courts in the instant case applied a stringent three-part test in determining whether the evidence was sufficient to support the duress defense. We conclude, however, that the three-part test applied by the lower courts is the wrong test for determining whether the evidence supports the duress defense. That test was the one followed at common law, which governed the law of duress prior to the enactment of 18 Pa.C.S. § 309 in 1972. *See United States v. Anthony*, 145 F.Supp. 323, 339–40 (M.D.Pa. 1956) (citing common law rule); *see also Commonwealth v. Schwartz*, 445 Pa. 515, 285 A.2d 154, 157 (1971) (citing common law rule as law governing duress in Pennsylvania); 10 P.L.E. Criminal Law § 42 (1972) (same). When the General Assembly enacted Section 309, however, it abrogated the common law test, finding that it was too difficult for defendants to meet. *See* 18 Pa.C.S. § 309, cmt. (1972) (standard set forth in Section 309 liberalizes existing law which provides that the coercion must be immediate and induce a well-grounded fear

---

**6.** We note that "[s]uch evidence may be adduced by the defendant as part of his case, or, conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination." *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880, 884–85 (1974).

of death or serious bodily injury); *see also* 18 Pa.C.S. § 105 cmt. (1972) (code "carefully defines crimes and defenses rather than leaving their definition to several centuries of common law"). Moreover, since the enactment of Section 309, this Court has repeatedly recognized that the test for determining whether the evidence supports the duress defense is the one set forth in the statute, rather than the common law test followed below. *See Commonwealth v. Pelzer*, 531 Pa. 235, 612 A.2d 407, 413–14 (1992); *Commonwealth v. Kyslinger*, 506 Pa. 132, 484 A.2d 389, 390–91 (1984); *Commonwealth v. Smith*, 490 Pa. 380, 416 A.2d 986, 988 (1980); *Commonwealth v. Santiago*, 462 Pa. 216, 340 A.2d 440, 446 (1975); *see also*, Pa. SSJI (Crim.) § 3.09.[7] Accordingly, the trial court in the instant case committed an error of law by using the abrogated common law test to determine whether the evidence supported the duress defense here.

As set forth by the General Assembly in Section 309, in order to establish the duress defense in this Commonwealth, there must be evidence that: (1) there was a use of, or threat to use, unlawful force against the defendant or another person; and (2) the use of, or threat to use, unlawful force was of such a nature that a person of reasonable firmness in the defendant's situation would have been unable to resist it. Thus, to establish the duress defense under Section 309, unlike under the common law rule, the force or threatened force does not need to be of present and impending death or serious bodily injury. Instead, the relevant inquiry under Section 309 is whether the force or threatened force was a type of unlawful force that "a person of reasonable firmness *in [the defendant's] situation* would have been unable to resist." *Id.*

7. We also note that the Superior Court erroneously cited *Berger*, 417 Pa.Super. 473, 612 A.2d 1037, as support for its conclusion that the common law test for duress applied in the instant case. While in its opinion, the *Berger* court did quote a portion of the Superior Court's decision in *Commonwealth v. Morningwake*, 407 Pa.Super. 129, 595 A.2d 158 (1991), which set forth the common law test for duress, the *Berger* court ultimately concluded that the duress defense was not viable based on Section 309. Moreover, to the extent that *Morningwake* endorses the common law test for duress, rather than that set forth in Section 309, we disagree with it.

(emphasis added). This test is a hybrid objective-subjective one. *See* 18 Pa.C.S. 309 cmt. (1972) ("[Section 309] is derived from Section 2.09 of the Model Penal Code"); MODEL PENAL CODE § 2.09 explanatory note (1985); *id.* § 2.09 cmt. at 7 (Tent. Draft No. 10, 1960). While the trier of fact must consider whether an objective person of reasonable firmness would have been able to resist the threat, it must ultimately base its decision on whether that person would have been able to resist the threat if he was subjectively placed in the defendant's situation. Therefore, in making its determination, the trier of fact must consider "stark, tangible factors, which differentiate the [defendant] from another, like his size or strength or age or health." MODEL PENAL CODE § 2.09 cmt. at 7 (Tent. Draft No. 10, 1960). Although the trier of fact is not to consider the defendant's particular characteristics of temperament, intelligence, courageousness, or moral fortitude, the fact that a defendant suffers from "a gross and verifiable" mental disability "that may establish irresponsibility" is a relevant consideration. *Id.* at 6. Moreover, the trier of fact should consider any salient situational factors surrounding the defendant at the time of the alleged duress, such as the severity of the offense the defendant was asked to commit, the nature of the force used or threatened to be used, and the alternative ways in which the defendant may have averted the force or threatened force. *See id.* at 7–8.

Even where the evidence is sufficient to establish the elements of the duress defense set forth in Section 309(a), however, the defendant still may not be entitled to avail himself of the defense under the exception in Section 309(b). According to that exception, the duress defense is not available if the evidence establishes that the defendant recklessly placed himself in a situation where it was probable that he would be subject to duress. 18 Pa.C.S. § 309(b). For purposes of Section 309, "recklessly" is defined as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a

nature and degree that, *considering the nature and intent of the actor's conduct and the circumstances known to him*, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe *in the actor's situation.*

18 Pa.C.S. § 302(b)(3) (emphasis added). *See also Commonwealth v. Knight*, 416 Pa.Super. 586, 611 A.2d 1199, 1204–05 (1992). Therefore, like the test for determining whether the defendant was subject to duress, the test for determining whether a defendant acted recklessly under Section 309 is a hybrid objective-subjective one. *See* MODEL PENAL CODE § 2.02 cmt. at 237–40 (1985). The trier of fact must decide whether the defendant disregarded a risk that involves a gross deviation from what an objective "reasonable person" would observe if he was subjectively placed "in the [defendant's] situation." 18 Pa.C.S. § 302(b)(3). Thus, in making its determination, the trier of fact must again take into account the stark tangible factors that differentiate the defendant from another person and the salient situational factors surrounding the defendant. *See* MODEL PENAL CODE § 2.02 cmt. at 237–40 (1985).

■ Here, Appellant presented evidence at trial that Larwa shot him with a B.B. Gun, choked him, and threatened to deprive him of his social security checks or kill him if he did not corroborate Larwa's account of how his cars came to be damaged. Appellant also presented evidence of his situation when the threats occurred, including that he: (1) suffers from seizures, (2) is borderline mentally retarded with a third grade intellectual level,[8] (3) receives social security because he is

8. During Appellant's trial, the Commonwealth argued that evidence that Appellant had a plate in his head, suffered from seizures, and was borderline mentally retarded could not be admitted for purposes of determining whether the duress defense was applicable under Section 309. Although the trial court decided to allow the evidence, it subsequently questioned whether such evidence was relevant under Section 309. *See* N.T., 9/14/99, at 157; Tr. Ct. Op. at 33. We find that the above evidence is clearly indicative of stark tangible ways in which Appellant differs from others in terms of his health and mental capacity, which, as noted above, is relevant to determining whether a defendant

mentally disabled, and (4) was living with Larwa without transportation or sufficient money to move to alternative housing. We find that the above evidence was clearly sufficient to present a question for the jury as to whether Appellant was subject to duress pursuant to Section 309, *i.e.,* whether Appellant was subject to unlawful force and threats by Larwa that a person of reasonable firmness in Appellant's situation would not have been able to resist.

The trial court found, however, that even if the evidence was sufficient to support the duress defense, the defense was not available based on the exception in Section 309(b). According to the trial court, this Court's decision in *Pelzer,* 531 Pa. 235, 612 A.2d 407, compelled such a conclusion. We disagree.

In *Pelzer,* the defendant argued that the trial court erred in refusing to provide a jury instruction regarding the duress defense because his post-arrest statement showed that his co-defendant had coerced him into shooting the victim. This Court rejected that argument, finding that the defendant's post-arrest statement was the only evidence tending to support the duress defense and that the statement itself showed that "nothing ... can be more obvious than that [the defendant] knowingly placed himself a situation in which it was probable that he would be subject to duress." *Id.* at 414. Thus, in *Pelzer,* this Court clearly based its decision that the defendant was not entitled to a duress defense instruction on the fact that the evidence left no question as to whether or not the defendant had recklessly placed himself in a situation where it was probable that he would be subject to duress.

Here, as noted by the trial court, there was evidence introduced at trial that Appellant had lived with Larwa in the past, had a bank account and an ATM card, had married several times, had worked, and was capable of contacting others via telephone. There was also evidence that Appellant had failed to seek the assistance of law enforcement officers in dealing with the alleged duress by Larwa when he was in the officers' presence. While these factors may call into question

was subject to duress under Section 309, and therefore, it was properly admitted.

whether Appellant recklessly placed himself in a situation where it was probable that he would be subject to duress, we do not find that they made it completely obvious, as in *Pelzer*, that that was the case. This is particularly so in light of the evidence of Appellant's situation, including the fact that he suffers from borderline mental retardation and that he was living with Larwa without transportation or sufficient money to leave. Accordingly, we conclude that there was sufficient evidence to raise a question of fact as to whether or not Appellant had acted recklessly.

Given that the evidence introduced at trial was sufficient to create an issue of fact for the jury regarding whether Appellant was subject to duress under Section 309 and whether the exception in Section 309(b) applies, we find that the trial court was required to instruct the jury regarding the duress defense and committed reversible error by refusing to do so. *See Lightfoot*, 648 A.2d at 764. We therefore reverse the decision of the Superior Court, vacate Appellant's judgment of sentence, and remand this case to the trial court for proceedings consistent with this decision.

Justice EAKIN files a concurring opinion.

Justice EAKIN, Concurring.

I agree with the proposition that the statute trumps the "three pronged test," and that the defense was entitled to the instruction, despite contrary language in the caselaw. While defendant never testified, the evidence included his prior testimony of threats, making the duress instruction appropriate, and I therefore concur in the reversal of the prior decision. However, I cannot agree with the broad statements of what is and is not relevant and admissible evidence as concerns this defense.

The test involves (1) a person of reasonable firmness, (2) in the accused's circumstance. I believe the language used by my colleagues elevates the accused's subjective mental firmness into the equation; this is not part of the statute, comments from the 1960 tentative draft of the Model Penal Code

notwithstanding. These broad strokes open the way for "experts" to offer hindsight opinions about what a defendant could and could not resist, which is the ultimate issue for the jury. Considerations of retardation and such may be relevant in a given case, but they are not determinative of this appeal; I would let them for another day when they are squarely presented.