J-S60018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES E. STYLES | |
| Appellant | No. 3474 EDA 2015 |

Appeal from the PCRA Order November 13, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014913-2009

BEFORE:  SHOGAN, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED JANUARY 03, 2017**

James E. Styles appeals from the order entered November 13, 2015, in the Philadelphia County Court of Common Pleas, dismissing his first petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]   Styles seeks relief from a term of five to ten years' imprisonment, and a consecutive, aggregate term of five years' probation, for numerous violations under the Uniform Firearms Act ("VUFA").[2]   On appeal, Styles contends trial counsel was ineffective for failing to pursue a

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  **See** 42 Pa.C.S. §§ 9541-9546.

[2]  See 18 Pa.C.S. § 6101 *et seq*.

duress defense and corresponding instruction. For the reasons below, we affirm.

The PCRA court set forth the factual history as follows:

At trial, the Commonwealth presented the testimony of Philadelphia Police Officer Javier Montanez. On October 2, 2009, at approximately 10:15 p.m., Officer Montanez was on patrol in the area of 29th and Flora Streets, in the city and county of Philadelphia, Pennsylvania. While driving southbound on 29th Street, he observed a crowd of approximately twenty-five (25) people on the corner of 29th and Flora Street[s], standing outside a bar called "Sarah's Place."

Officer Montanez saw [Styles] standing "at the lower step of the bar," pointing a silver handgun at a group of females about twenty (20) feet away. Officer Montanez witnessed [Styles] fire the gun "toward the waistline and leg area of the females." The officer testified that he heard the gunshot, and saw a "muzzle flash."

After the gunshot, Officer Montanez immediately parked and exited his patrol car with his gun drawn. By this time, a crowd of people were chaotically running toward him. Among this crowd was [Styles], who was "speed walking" in the officer's direction as though "not acknowledging that [the officer] actually saw him discharge the firearm at the females." Officer Montanez ordered [Styles] to the ground, "placed [his] knee … on [Styles's] waistline," reached into [Styles]'s right waistband, and recovered the gun. The firearm was loaded with six live rounds in its magazine and one round in the chamber.[1] After placing [Styles] under arrest, Officer Montanez recovered a spent shell casing outside the bar, at the same location from which [Styles] fired the gun. Forensic evidence established that the gun had discharged this shell casing.[2]

_____

[1] The parties stipulated that the certified record, from the Pennsylvania State Police, states that [Styles] had no license to carry a firearm on October 2, 2009.

[2] The Commonwealth presented the testimony of Gamilia Marshal, who is a Firearms Examiner for the Philadelphia

Police Department. [Styles] stipulated that Ms. Marshal is qualified as an expert in "firearms identification," and she testified "to a reasonable degree of scientific certainty" that the shell casing was discharged from the gun recovered from [Styles].

_____

Officer Montanez further testified that the three females, at whom he saw [Styles] shoot, ran up to him and screamed: "[h]e just shot at me. He just shot at me." These females were Precious Leverette, Shakea Johnston, and Thomika Thomas.

Precious Leverette testified at trial.[3] She claimed that she, her cousin (Thomika Thomas), and her friend (Shakea Johnston), together went to "Sarah's Place" on October 2, 2009. At some point in the evening a fight broke out and the bar's owner, "Ms. Sarah," told everyone to leave … because there was too much complication in the bar." While the three females made their way to the exit, [Styles] began "pushing [Ms. Thomas], telling her [to] move, bitch, hurry up bitch." Upon hearing this, Ms. Leverette confronted [Styles], who "started pushing" her and calling her a bitch. When Ms. Leverette exited the bar, and after being pushed by [Styles] "about four times," she "grabbed [Styles] and threw him towards a black truck."

_____

[3] Ms. Leverette originally lied to the police, telling them her name was Precious "Taylor." She claimed she had given this false name because she lives in the neighborhood where the incident occurred, and feared the consequences of cooperating with the police. She feared, in particular, being labeled a "snitch."

_____

In response to being thrown against the truck, [Styles] pulled a gun from his waistband, pointed it towards Ms. Leverette's feet, and fired. Ms. Leverette testified that the bullet missed her because Ms. Johnston had grabbed her from behind and pulled her away. After the gunshot, Ms. Leverette and her companions ran, "going zigzag" around cars because Ms. Leverette believed [Styles] would shoot again.

Ms. Leverette's testimony differs in some respects from that of Officer Montanez. Officer Montanez testified that [Styles]

and Ms. Leverette stood approximately twenty (20) feet apart when [Styles] shot the gun, but Ms. Leverette testified they were "face to face." Officer Montanez further testified that he recovered the gun from [Styles]'s right waistband while [Styles] was face-first on the ground, but Ms. Leverette testified that [Styles] had placed the gun on the ground in compliance with the officer's orders. In other words, Ms. Leverette claimed that Officer Montanez did not recover the gun from [Styles]'s waistband.[4]

_____

[4] Furthermore, on cross-examination, Ms. Leverette testified she did not see Officer Montanez arrive until after the shot was fired. She also testified that she originally tried to flee the scene, but was stopped by the police.

_____

The defense presented the testimony of Ernestine Savage and Tujuana Burgess, both of whom claimed to have been at Sarah's Place at the time of the shooting. Ms. Savage testified that an argument broke out between [Styles] and another female inside Sarah's Place, which culminated outside the bar. Looking outside the bar's front door, Ms. Savage saw "a lot of females surrounding [Styles] …[.] They were on his back, like they were jumping on him." Ms. Savage heard a gunshot during the brawl, but she did not see [Styles] with a gun.[5]

_____

[5] On cross-examination, Ms. Savage testified that she had known [Styles] for approximately fifteen (15) years and that she is his "close friend." However, prior to trial, Ms. Savage never informed the police or "anyone" else that she had seen [Styles], her "close friend," being assaulted by a group of females just prior to his arrest.

_____

Ms. Burgess, an "acquaintance" of [Styles] who frequents Sarah's Place, likewise testified that an argument broke out inside the bar, during which [Styles] asked a female patron "to leave his cousin's establishment because he didn't want no trouble in there." Although Ms. Burgess heard [Styles] call the female a bitch, she never saw [Styles] push or punch this individual. Rather, when [Styles] stepped outside of the bar, Ms.

Burgess saw him talking to an unidentified male and "trying to apologize for calling the girls a bitch."

According to Ms. Burgess, while [Styles] offered his apology, "[a] girl came up from behind and hit [him] in his head." "[T]hen another girl came, and it was like a free for all, it was a fight." While [Styles] was under attack, still another "young lady," who "wasn't in the bar," pulled out a silver gun. [Styles] "wrestled" this woman for the gun, and "the next thing [Ms. Burgess] knew … the gun went off."[6]

---

[6] Ms. Burgess testified in part: "[Styles] thought quick. We all could have been dead out there. One of us could have been killed. I'm glad he got the gun from her. I really am. Similar to Ms. Savage, Ms. Burgess never bothered to inform the police that [Styles] had disarmed a dangerous individual, and that they arrested the wrong person.

PCRA Court Opinion, 8/11/2014, at 2-6 (record citations omitted) (emphasis in original).

Styles was charged with three counts of aggravated assault[3] and recklessly endangering another person (REAP),[4] and three violations of VUFA.[5] The jury acquitted Styles of aggravated assault and REAP, but convicted him of two of the VUFA charges (carrying without a license and carrying on a public street in Philadelphia). Following the jury trial, the trial

---

[3] 18 Pa.C.S. § 2702.

[4] 18 Pa.C.S. § 2705.

[5] 18 Pa.C.S. §§ 6105, (persons not to possess firearms), 6106 (firearms not to be carried without a license), and 6108 (carrying firearms on public streets or property in Philadelphia).

court held a bench trial, and convicted Styles of persons not to possess firearms. The trial court sentenced Styles to an aggregate term of five to ten years' incarceration, followed by a term of five years' probation.[6] A panel of this Court affirmed the judgment of sentence on direct appeal. **Commonwealth v. Styles**, 38 A.3d 908 [2878 EDA 2010] (Pa. Super. 2011) (unpublished memorandum).[7]

On March 2, 2012, Styles filed, *pro se*, a timely first PCRA petition. The PCRA court appointed counsel, who filed amended and supplemental petitions on August 29, 2012, and November 5, 2012, respectively. The PCRA court held hearings on December 13, 2013, and March 6, 2014. The court formally dismissed Styles's petition on March 24, 2014.

Styles appealed and argued the PCRA court erred in denying a new trial based on after-discovered evidence and ineffective assistance of counsel for not presenting a duress defense. The panel affirmed in part and vacated in part. **Commonwealth v. Styles**, 122 A.3d 453 [876 EDA 2014] (Pa. Super. 2014) (unpublished memorandum). With respect to the

---

[6] Specifically, Styles was sentenced to five to ten years' incarceration on the charge of persons not to possess firearms, three years' probation on the charge of firearms not to be carried without a license, and two years' probation on the charge of carrying firearms on public streets in Philadelphia. His terms of probation were to run consecutive to each other, and consecutive to his term of imprisonment.

[7] Styles did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

ineffectiveness issue, which is pertinent to this appeal, Styles claimed trial counsel should have argued to the jury and requested an instruction on duress because he maintained he was forced to take the handgun from Leverette so that she did not shoot anyone else. *Id.* (unpublished memorandum at 8-9). The panel determined Styles's claim was sufficient to overcome the arguable merit prong of the ineffective assistance of counsel test. Specifically, the panel stated:

> We agree with [Styles] that his claim has arguable merit.[6] At trial, Savage testified that some females began fighting inside the bar, that [Styles] asked them to leave, and that five to six females "jump[ed]," punched, and kicked [Styles] in the street. Burgess testified that [Styles] asked a woman who caused a "commotion" inside the bar to leave. She said that when [Styles] was outside, a woman punched him in the back of his head. A fight broke out, and Burgess saw a woman pull a gun, [Styles] and the woman "tussl[ed]," and the gun went off. [Styles]'s evidence—if believed—shows he was accosted by an armed Leverette, and took the firearm in a struggle to prevent her from shooting him or anyone else. Based on that evidence, trial counsel could have argued that Leverette, armed with a handgun, threatened [Styles]; [Styles] reasonably feared for his safety; and Leverette's threat was of such a nature that a person of reasonable firmness in the defendant's situation would have been unable to resist it. That is, trial counsel could have argued that [Styles] possessed the firearm under duress, and requested jury instruction on duress.
>
> _____
>
> [6] We reject, however, the conclusions [Styles] reaches from the jury's acquittal of aggravated assault and REAP. [Styles] attempts to argue that the jury's partial acquittal shows it found Officer Montanez's and Precious Leverette's testimony not credible, and that [Styles] did not deliberately fire the weapon into a crowd. [Styles]'s Brief at 22, 27. Contrary to [Styles]'s argument, "[a partial] acquittal cannot be interpreted as a specific finding in

relation to some of the evidence." ***Commonwealth v. Carter***, 282 A.2d 375, 376 (Pa. 1971).

_____

To reject [Styles]'s claim, the PCRA court improperly weighed the evidence. The PCRA court posited that [Styles] could have taken the gun from Leverette, or thrown it onto a rooftop instead of firing the weapon. Whether [Styles] could have taken another course of action relevant to duress is for the fact-finder to resolve. The Commonwealth points to evidence that [Styles] possessed the firearm prior to discharging toward a crowd of people. However, the record also contains evidence that [Styles] wrestled away the firearm from Leverette. Although it is possible to disbelieve the evidence supporting duress, determination of the credibility and weight of the evidence are for the jury to decide. Where the defendant puts forward evidence to support a duress defense, a trial court cannot refuse to instruct the jury based on its determination that the evidence is not credible. ***See Markman***, 916 A.2d at 607-08 (concluding trial court erred in refusing instruction on duress where defendant testified that her codefendant battered her and threatened her with a knife if she did not participate in kidnapping and murder).

Additionally, the record contains conflicting evidence as to whether [Styles] recklessly placed himself into a situation where he would probably be under duress. The Commonwealth's witnesses testified that [Styles] initiated the confrontation, while [Styles]'s witnesses testified that a woman and her companions did so. The PCRA court accepted as true evidence that [Styles] was the initial aggressor. ***See*** PCRA Court Opinion, 8/11/14, at 10 ("Arguably, the defense of duress was not even available to [Styles] given his behavior in physically pushing and shoving Ms. Thompson and Ms. Leverette, and addressing each of them as 'bitch'."). "Notably, it is the **trier of fact** that must determine whether the defendant acted recklessly." ***Markman***, 916 A.2d at 608 (emphasis in original). Therefore, the trier of fact should have determined whether [Styles] was indeed the initial aggressor, or whether [Styles]'s witnesses credibly testified that the victims started the fight. ***See id.*** at 609 (concluding trial court erred in refusing duress instruction where record contained conflicting evidence on the issue of whether the defendant was reckless).

*Styles*, 122 A.3d 453 [876 EDA 2014] (Pa. Super. 2014) (unpublished memorandum at 13-15) (record citations omitted; emphasis in original).

Nevertheless, the panel declined to reverse the PCRA court's order entirely because the court did not address whether trial counsel had a reasonable basis for not pursuing a duress defense and whether there was prejudice resulting from the omission. *See id.* (unpublished memorandum at 16-17). Therefore, the panel remanded the matter, directing the PCRA court to analyze whether Styles met these remaining prongs of the ineffectiveness test.

Following remand, the PCRA court held a second evidentiary hearing on August 27, 2015, and counsel submitted briefs on the matter. On November 16, 2015, the PCRA court again dismissed Styles's petition, finding that neither of the two remaining prongs were met. This appeal followed.

In his sole argument on appeal, Styles contends the PCRA court erred in finding trial counsel was not ineffective for failing to present a duress defense and seek a corresponding jury instruction. *See* Styles's Brief at 15.

Our review of an order dismissing a PCRA petition is well-established: we must determine whether the PCRA court's findings of fact are supported by the record, and whether its legal conclusions are free from error. *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). "Great deference is granted to the findings of the PCRA court, and these findings will not be

disturbed unless they have no support in the certified record."

***Commonwealth v. Carter***, 21 A.3d 680, 682 (Pa. Super. 2011) (citation omitted).

With respect to a claim of ineffective assistance of counsel, we are guided by the following:

> It is well-settled that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. ***Strickland v. Washington***, 466 U.S. 668, 687-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674, (1984). This Court has described the ***Strickland*** standard as tripartite by dividing the performance element into two distinct components. ***Commonwealth v. Pierce***, 515 Pa. 153, 527 A.2d 973, 975 (Pa. 1987). Accordingly, to prove trial counsel ineffective, the petitioner must demonstrate that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) the petitioner was prejudiced by counsel's act or omission. ***Id.*** A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs.
>
> Regarding the reasonable basis prong of the ineffectiveness test, we will conclude that counsel's chosen strategy lacked a reasonable basis only if the petitioner proves that the alternative strategy not selected offered a potential for success substantially greater than the course actually pursued. ***Commonwealth v. Koehler***, 614 Pa. 159, 36 A.3d 121, 132 (Pa. 2012). To establish the prejudice prong, the petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. ***Id.***

***Commonwealth v. Elliott***, 80 A.3d 415, 427 (Pa. 2013), *cert. denied*, 135 S.Ct. 50 (U.S. 2014).

Turning to the present matter, Styles states:

> The theory of the defense was that Precious [Leverette] was lying; that the weapon Mr. Styles possessed when confronted by the police was hers; and that the weapon was taken away from her when she pointed it at Mr. Styles while he was also being attacked by several other women.
>
> Had counsel requested a charge on the duress defense, it is respectfully submitted the jury could have found that he was acting under both duress and self-defense. Indeed, that latter defense had been accepted by the jury as to the assault charges. The duress instruction and defense would have provided a complete defense to the weapons charges as well.
>
> Supporting this argument was defense testimony that the women outside were attacking him and attacking him with a gun so that he was forced to possess the weapon. The defense witness testified that Mr. Styles went outside to apologize for his use of the term "bitch" inside the bar and his potential rough treatment of one of Ms. [Leverette]'s companions. Despite presenting this olive branch, Mr. Styles was attacked by several women, and Ms. [Leverette] pulled out a handgun, which she had kept concealed. Styles was able to wrestle the gun away from her and in so doing, the gun fired.

*Id.* at 15-16.[8]

Furthermore, with respect to the reasonableness prong of the ineffectiveness test, Styles asserts the PCRA court erred in determining that counsel's actions were not unreasonable based on its conclusion that the prior **Styles** panel's "determination as to arguable merit constituted a novel interpretation of the statute" and counsel could not have predicted "this perceived change in the law." *Id.* at 17. Relying on **Commonwealth v.**

_____

[8] In other words, Styles alleges counsel should have argued a duress defense for the possession crimes and a defense of self-defense for the aggravated assault and REAP offenses.

- 11 -

*DeMarco*, 809 A.2d 256 (Pa. 2002), Styles contends that one need only look to the plain meaning of the statute to see that the duress defense applies in the present matter. He states that based on the facts of this case,

> a reasonable person would have believed that [Styles] could have been shot and/or killed if he did not take quick and drastic action. This factual scenario fits the definition of duress as explained in **DeMarco** and contrary to the finding of the lower Court, this was not a new interpretation which trial [c]ounsel was not unreasonable for failing to predict.
>
> Indeed at both hearings after [c]ounsel was confronted with the plain meaning of the statute, he admitted he could have used that defense because in taking the weapon used to attack Mr. Styles, this required him to break the law.
>
> He further conceded that there is nothing in the statute that requires that a person actually has to **direct** a second person under threat of some sort of harm to perform an illegal act.

*Id.* at 20 (emphasis in original).

Additionally, with regard to the prejudice prong, Styles noted that in convicting him of VUFA under Section 6105, the trial court did not find the defense witnesses credible. *Id.* at 21. He states this is "problematic" because if he "had been found not guilty of all charges, the [Section] 6105 case was going to be nol prossed" pursuant to a stipulation agreement between the parties. *Id.* Styles requests this Court look to the jury's verdict and findings, rather than to the trial court's finding with respect to the prejudice prong. *Id.* at 22. He also points to the following to demonstrate prejudice: (1) Leverette made a statement at trial that she had the gun during the altercation; (2) Officer Montanez's testimony was

rejected and contradicted by the rest of the witnesses; and (3) the jury acquitted Styles of aggravated assault and REAP. *Id.* at 22-23.

"Duress is a defense to criminal culpability." ***Commonwealth v. Markman***, 916 A.2d 586, 606 (Pa. 2007). The duress defense is codified as follows:

> **(a) General rule.--**It is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.
>
> **(b) Exception.--**The defense provided by subsection (a) of this section is unavailable if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress. The defense is also unavailable if he was negligent in placing himself in such a situation, whenever negligence suffices to establish culpability for the offense charged.

18 Pa.C.S. § 309.

In ***DeMarco***, which Styles relies on, the Pennsylvania Supreme Court stated:

> As set forth by the General Assembly in Section 309, in order to establish the duress defense in this Commonwealth, there must be evidence that: (1) there was a use of, or threat to use, unlawful force against the defendant or another person; and (2) the use of, or threat to use, unlawful force was of such a nature that a person of reasonable firmness in the defendant's situation would have been unable to resist it.

***Demarco***, 809 A.2d at 261-262.

Here, the PCRA court found the following:

> At the PCRA hearing, counsel for [Styles] called trial counsel to the stand who testified in pertinent part as follows:

- 13 -

THE COURT: So the question is, [trial counsel], knowing what you knew prior to trial --

[Trial counsel]: Yes.

THE COURT: -- knowing everything that you knew prior to trial, both in terms of the duress defense, the law that supports the duress defense, and the facts of this case, would you have used the duress defense?

Did you consider using the duress defense? And if not, why not?

[Trial counsel]: I did not consider using the duress defense prior to this proceeding [today] because I was under the belief that the duress defense worked in a different set of facts than the facts we had in this particular case.

THE COURT: And could you be more specific about that belief?

[Trial counsel]: My belief was that a duress defense could have been brought forth, if, in fact, a person was coerced into committing a crime against their own will.

For example, a robbery. Someone says, I'm going to rob this store, you're going to drive me and take me back, I don't want to do it, well, if you don't do it then I'm going to do such and such to you. Then that person is forced to commit a crime with someone else.

I was under the belief [that] that's what the duress defense would cover. There are other avenues for which you could get duress defense, but that's what I thought.

In the situation with this particular case, where [Styles] had taken the weapon from someone else, I didn't see that as a duress defense because they didn't force him to take the weapon in the matter of, we want you to break the law.

(N.T. 08/27/15, at pp. 11-12).

- 14 -

Based on the above testimony, and following a comprehensive review of case law involving the defense of duress, this Court finds that trial counsel's belief -- though perhaps *inaccurate* in light of the Superior Court's recent memorandum opinion Commonwealth v. Styles, supra -- was nonetheless *reasonable*. This Court has combed the case law and has unearthed no prior decision remotely involving the facts and charges sub judice; rather, virtually every pertinent duress decision involves facts and/or allegations of another intentionally and directly ordering the defendant to commit a crime, under the threat of physical harm. See, e.g., Commonwealth v. Markman, 916 A.2d 586 (Pa. 2007); Commonwealth v. DeMarco, 809 A.2d 256 (Pa. 2002); Commonwealth v. Horton, 644 A.2d 181 (Pa. Super. 1994). While this Court does not disagree with the learned analysis contained in the Superior Court's memorandum opinion, it also does not find that trial counsel was unreasonable in failing to predict it. For this reason alone, [Styles]'s claim fails. See Commonwealth v. Sneed, 899 A.2d at 1076.

Nonetheless, turning to the prejudice prong, and as the Superior Court expressly observed above, this Court was the fact finder on the charge of persons not to possess firearms -- i.e., the only offense for which [Styles] received a sentence of incarceration. In that regard, this Court did not find the defense witnesses, Ernestine Savage and Tujuana Burgess -- both of whom were friends of [Styles] -- to be credible. Rather, this Court believed the testimony of Officer Montanez and Ms. Leverette, and accordingly, found that [Styles] was indeed guilty of the offense of persons not to possess firearms. A jury instruction on duress would not have altered this Court's credibility determination as fact finder.

PCRA Court Opinion, 11/30/2015, at 2-4 (italics in original).

We agree with the PCRA court's ultimate decision. We find the court's conclusion is tantamount to a determination that it would not have given the duress defense jury charge if requested by trial counsel because, like

counsel, it could not find any supporting case law. Indeed, prior to the previous **Styles** memorandum,[9] no decision, not even tenuously, has involved a similar set of facts as those before us. Rather, as the PCRA court opines, the limited precedence has applied the duress defense to facts where another individual intentionally and directly orders the defendant to commit a crime, under the threat of physical harm. **See Commonwealth v. Markman**, 916 A.2d 586 (Pa. 2007) (defendant entitled to duress instruction where evidence demonstrated defendant's paramour repeatedly beat her, placed a knife to her throat or side, and threatened to kill her if she did not assist him in kidnapping and killing the victim); **Commonwealth v. DeMarco**, 809 A.2d 256 (Pa. 2002) (defendant entitled to duress instruction where the evidence established he suffered from borderline mental retardation and was subject to unlawful force and threats by his own roommate that caused him to perjure himself); **Commonwealth v. Horton**, 644 A.2d 181 (Pa. Super. 1994) (defendant established ineffective assistance of counsel for failure to request adequate jury instruction on duress defense where evidence demonstrated another perpetrator had pointed his gun in appellant's direction while issuing a command to take money from the victim). We note that even though Styles relies on **DeMarco** for an elaboration on the duress statute, the facts in **DeMarco** are

---

[9] We note that since the first **Styles** decision, there has been no case applying the duress defense to a similar set of facts.

not substantially similar to the facts. In **DeMarco**, there was an explicit and direct threat made by another individual to the defendant whereas, in the present matter, there was no explicit compulsion issued by another individual, directing Styles to possess the gun.

> As such, we emphasize:
>
> Counsel cannot be faulted for failing to advance a novel legal theory which has never been accepted by the pertinent courts. **See Commonwealth v. Todaro**, 549 Pa. 545, 701 A.2d 1343, 1346 (Pa. 1997) ("counsel's stewardship must be judged under the existing law at the time of trial and counsel cannot be deemed ineffective for failing to predict future developments or changes in the law").

**Commonwealth v. Jones**, 811 A.2d 994, 1005 (Pa. 2002).

Accordingly, we find trial counsel's strategy did not lack a reasonable basis because Styles has failed to demonstrate that an "alternative strategy not selected offered a potential for success substantially greater than the course actually pursued." **Elliott**, 80 A.3d at 427.[10] Furthermore, because one can reasonably conclude based on the court's opinion that it would not have given the charge, Styles has not demonstrated "there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." **Id.** Therefore, we conclude Styles has failed to prove the remaining prongs of the ineffective assistance of counsel

---

[10] It also merits mention that trial counsel did present a defense of self-defense, and one can reasonably infer that suggesting an alternate theory could have had the effect of confusing the jury or detracting from the credibility of the defense.

test and the PCRA court did not err in dismissing his petition where trial counsel cannot be considered ineffective for failing to pursue a duress defense and corresponding instruction.

Order affirmed.

Judge Shogan joins the memorandum.

Judge Strassburger files a dissenting memorandum.

'Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/3/2017