J-S32006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANTHONY MAGLIETTA :
:
Appellant : No. 485 MDA 2022

Appeal from the PCRA Order Entered March 14, 2022
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0000807-2016

BEFORE: PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY PANELLA, P.J.: **FILED: DECEMBER 20, 2022**

Anthony Maglietta appeals the Lancaster County Court of Common Pleas' order denying his first petition filed pursuant to the Post Conviction Relief Act, 42 Pa. C.S.A. §§ 9541-9546. In his petition, Maglietta raised six claims that counsel had rendered ineffective assistance during his trial for aggravated assault and other offenses stemming from the severe beating of Shaliek Rivera ("Victim") outside of a bar owned by Maglietta. Those ineffectiveness claims included a challenge to counsel's failure to request an instruction on duress based on Maglietta's testimony that he had been coerced into participating in the beating by employees of his bar who were also members of a local gang. After holding a hearing, the PCRA court found that all of Maglietta's ineffectiveness claims were meritless. Maglietta argues on appeal that the PCRA court erred in finding that counsel was not ineffective.

We agree, as we conclude counsel was ineffective for failing to request an instruction on duress. We therefore reverse the PCRA court's order denying relief and remand for a new trial.

The PCRA court and this Court on direct appeal summarized the facts of the assault underlying this matter, and we borrow liberally from those summaries. Maglietta owned and lived next door to Molly's Pub and Carry-out ("the Pub") in Lancaster. He had installed video surveillance systems outside both the Pub and his residence.

Maglietta employed Alexander Rodriguez-Cruz, Joshua Ellis and Raymond Lee as security guards at the Pub. Just before one a.m. on December 25, 2015, Cruz, Ellis, Lee and Maglietta were outside of the Pub. Victim approached the group, and Lee and Victim engaged in a conversation. During their exchange, Lee punched Victim in the head and knocked him unconscious. Maglietta, Ellis and Cruz stood near Lee, watching the assault.

Victim remained unconscious and convulsing on the ground for several minutes. He regained consciousness, stood up, and began to stumble towards Maglietta's residence. However, Lee threw Victim back on the sidewalk and began to punch and kick him. Victim stood up once again, and tried to enter a vehicle. Lee, in the presence of Maglietta, Ellis, and Cruz, removed Victim from the vehicle. Victim proceeded to sit on a flower bed near the Pub. Lee, Ellis, Cruz and Maglietta then punched and kicked Victim, beating him once again into unconsciousness.

Victim survived the attack, but he sustained serious injuries. Those injuries included bruising of the brain, a fractured nose and bone fragments in his ear. Victim suffered from short-term memory loss and did not have any memory of the assault.

During the investigation of the assault, Sergeant Michael Gerace of the Lancaster City Police Department contacted Maglietta and inquired about surveillance video footage of the assault. Maglietta told the sergeant that some of the cameras were not working at the time of the assault and others had been blocked by Holiday decorations.

Despite these assertions, Sergeant Gerace obtained search warrants for the footage. Maglietta showed the footage to Sergeant Gerace and Detective Sergeant John Duby, also of the Lancaster City Police Department. The officers noticed that Maglietta was intentionally skipping or fast-forwarding through footage of the assault. As a result, Sergeant Gerace had other investigators play the footage. The footage revealed that Maglietta had been involved in the assault, and that he had been laughing and making a kicking motion while talking with the other men after the assault. Sergeant Gerace arrested Maglietta, and he was charged with aggravated assault, conspiracy to commit aggravated assault, obstructing administration of law or other government function, and tampering with evidence.

The matter proceeded to a three-day jury trial, with Maglietta being tried alongside Cruz, Ellis, and Lee.[1] Sergeant Gerace and Detective Sergeant Duby testified for the Commonwealth, as did two other officers from the Lancaster City Police Department. Victim also testified. The Commonwealth admitted the videotaped footage of the assault on Victim into evidence.

Maglietta testified on his own behalf. Maglietta stated that he hired Ellis in 2013 and Lee in 2014, and later learned they were members of the Lancaster chapter of the Bloods Street Gang. He maintained that starting in March 2015, Lee and Angel Calvo, another security guard and member of the Bloods Street Gang, began drinking during work and "not really doing their job." N.T. Trial, 5/23/2017, at 309, 340. The clientele was becoming rowdier and harder to control. *See id.* at 310. According to Maglietta, when he raised these issues with Calvo and Lee, Calvo punched Maglietta, explained to him the rules of the Bloods Street Gang, and informed him there were severe repercussions for "snitching and talking to police." *Id.* at 311.

Maglietta testified this assault prompted him to make a general report to a friend on the police force, who referred Maglietta to a detective in the special unit on gang violence. *See id.* at 312. Maglietta emailed that detective about his concerns with the "blatant gang activity" in the Pub, and the

---

[1] Francisco Camacho was also involved in the assault and was originally a co-defendant, but he entered into a plea agreement with the Commonwealth prior to trial.

detective responded he would get back to Maglietta about scheduling a time to meet. *Id.* at 312-313, 314-315. Shortly after sending these emails, in April 2015, Maglietta asserted Calvo and Lee beat him into unconsciousness, with Calvo hitting him in the face with a loaded gun. *See id.* at 318. Maglietta claimed people were stealing from the Pub, and Calvo and Lee were personally stealing and extorting money from him. *See id.* at 320.

According to Maglietta, he met with police about an incident that occurred near his bar in August of 2015. He admitted he did not bring up Lee, Calvo or any other individual during this interview as he did not want to face the repercussions of being a snitch. *See id.* at 323.

Maglietta also asserted Lee assaulted him again in the fall of 2015, this time for wearing too much of the Bloods Street Gang's color when he was not a member of the gang. *See id.* at 321. He testified the Pub was in foreclosure by this time due to all of the stealing. *See id.* at 322. He claimed he was once again assaulted by Calvo on December 6, 2015, after refusing to give Calvo money to pay his rent. *See id.* at 324. The beating took place inside the Pub after it had closed, and was captured on the Pub's inside video surveillance camera. *See id.* at 324. Maglietta gave a copy of the video to his friend on the police force. *See id.* However, he testified he never reported it to "higher-ups" on the force because he was "in this position where I can't report it." *Id.* at 342.

As for the night that Victim was assaulted, Maglietta reported he was inside his house having drinks with a group of people, including Lee, Ellis, and Cruz. They left his house and once outside, Maglietta saw Lee punch Victim. Maglietta testified that he thought to himself, "here we go again," and that he did not want to be involved in the fight. *Id.* at 329. However, he did not deny that he ultimately struck Victim during the assault. He asserted, in essence, that he had done so weakly and only to make it appear to his co-defendants he was participating in the assault in order to avoid being further attacked himself. When asked why he kicked and punched Victim, Maglietta responded:

> I'm at the end of my rope here. I have – my business [is] in complete ruins. I have been beaten over a cell phone, beaten over not paying rent, beaten for wearing a jacket.
>
> ***
>
> I have had servers punched out, bartenders punched out, customers punched out and just destroyed and trashed on my property and – and it's just– and I'm there and it's like, you know what, if I don't get on this frame of mind and make it appear that I'm [on my co-defendants' side and] doing something, you know, I could face additional repercussions.

*Id.* at 331-332.

He insisted he did not mean to hurt Victim, and had not hit him hard. *See id.* at 332, 334. According to Maglietta, he was "doing little, tiny, you know, punches." *Id.* at 332. Maglietta also admitted he had a gun on him during the assault, but stated that if he had attempted to use it to protect Victim "we'd be here for a murder trial." *Id.* at 370-371.

During closing argument, defense counsel primarily argued to the jury that Maglietta never intended to cause serious bodily injury to Victim, and the jury should therefore, at most, find Maglietta guilty of simple assault. Counsel did not ask the court to give the jury an instruction on a duress defense.

Following deliberations, the jury convicted Maglietta of aggravated assault, conspiracy to commit aggravated assault and tampering with evidence.[2] On August 7, 2017, the trial court sentenced Maglietta to an aggregate term of five and one-half to eleven years' imprisonment and ordered him to pay $7,786.37 in restitution. This Court affirmed Maglietta's judgment of sentence on direct appeal, rejecting Maglietta's claims that the Commonwealth's evidence was insufficient to support his aggravated assault and conspiracy convictions and that the court had abused its discretion in sentencing him. *See Commonwealth v. Maglietta*, 1019 WL 2414237 (unpublished memorandum) (Pa. Super. filed June 7, 2019). Our Supreme Court denied Maglietta's petition for allowance of appeal on January 3, 2020. Two attorneys from the same law firm represented Maglietta at trial and at sentencing, as well as on direct appeal.

---

[2] The Commonwealth withdrew the obstructing administration of law charge at trial, and the trial court granted Maglietta's post-trial motion for judgment of acquittal as to his conviction for tampering with evidence. As for Maglietta's co-defendants, the jury also convicted Lee, Ellis and Cruz of aggravated assault and conspiracy.

In July 2020, Maglietta filed a timely *pro se* PCRA petition. Counsel was appointed, and filed an amended PCRA petition on Maglietta's behalf, raising six claims of trial counsel's ineffectiveness. The PCRA court held a hearing on the claims. Either prior to or during the hearing, the video footage showing Maglietta being assaulted inside the Pub in December 2015, which trial counsel had decided not to show to the jury, was played for the parties and the court. **See** N.T. PCRA Hearing, 8/10/2021, at 9-10, 32, 39.

Both trial counsel testified at the hearing (hereinafter collectively "counsel"). Counsel's testimony indicated what the strategies were for Maglietta's defense. To that end, counsel essentially testified that the defense was not to deny Maglietta participated in the assault, given the camera footage. Rather, the defense was focused on distancing Maglietta from, and showing his fear of, his co-defendants. **See id.** at 6, 14, 22, 23. Moreover, counsel testified they sought to show Maglietta did not intend to seriously injure Victim, but merely half-heartedly threw blows at Victim to give the appearance to his co-defendants that he was participating in Victim's assault to avoid the co-defendants turning on him. **See id.** at 9, 23, 25-26.

Counsel testified they were aware of Maglietta's position that he had been acting out of fear of the co-defendants on the date of the assault. **See id.** at 7, 23. Counsel stated that although they discussed using a duress

defense, it was ultimately decided that counsel would not request an instruction on duress. *See id.* at 7.[3] When asked why, counsel responded:

> I think there were two reasons. One, reviewing the instruction, my interpretation was that we had to admit the offense. The other was, and this is a little broadly remembered, but I believe the duress had to do – had to have something to do with what was going on at the moment. There's the immediacy of duress.

*Id.* at 24.

Counsel testified they were aware Maglietta wanted a not guilty verdict. *See id.* at 24. Counsel asserted they were "trying for a not guilty," but "the next thing would have been his intent to not hurt [Victim], which is simple assault." *Id.* at 24.

Maglietta testified at the hearing as well. He confirmed he wanted a not guilty verdict, and it was his understanding counsel was seeking a not guilty verdict. *See id.* at 47, 49. He reiterated his testimony from trial about gang members taking over the Pub and threatening and extorting money from him for the months leading up to Victim's assault. *See id.* 37-38, 40. He testified he had been physically assaulted by a Bloods Street Gang member on at least five occasions prior to the assault on Victim. *See id.* at 41.

Maglietta testified he told counsel about the threats and the beatings. *See id.* at 47-48. They discussed duress as a defense and that is what

---

[3] The first attorney to testify at the hearing actually indicated it was his co-counsel's decision not to pursue a duress defense or request an instruction on duress, and that it was a decision with which he did not agree. *See id.*

Maglietta "thought our defense was with the mountain of evidence that was in my favor." *Id.* at 48. Maglietta testified he did not discover counsel had not requested a duress instruction until May 23, 2017, the day the court had given as a deadline for counsel to submit requested instructions. According to Maglietta, when he asked counsel about the duress instruction, counsel told him they had not submitted the duress instruction to the court "because that's not the theory of our case [any longer]. We're now going for simple assault." *Id.* at 50. Maglietta insisted he did not consent to this change of strategy. *See id.*

Following the hearing, the parties complied with the court's order to submit briefs. The PCRA court ultimately denied the petition. Maglietta filed a timely notice of appeal, which is now before the Court.

Our review of an order dismissing a PCRA petition is limited to examining whether the PCRA court's determinations are supported by the record and the court's decision is free of legal error. *See Commonwealth v. Shaw*, 217 A.3d 265, 269 (Pa. Super. 2019). Although we give great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record, we apply a *de novo* standard of review to the PCRA court's legal conclusions. *See Commonwealth v. Benner,* 147 A.3d 915, 919 (Pa. Super. 2016).

On appeal, Maglietta raises five of the six ineffectiveness claims he raised in his PCRA petition. Specifically, Maglietta alleges counsel was

ineffective for: 1) failing to seek a jury instruction on the defense of duress; 2) failing to object to the prosecutor's cross-examination regarding Maglietta's sexual relationship with two male members of the Bloods Street Gang; 3) eliciting testimony that Maglietta had exercised his right to counsel when questioned by the police; 4) failing to introduce the email messages exchanged between Maglietta and the police; and 5) failing to introduce the video of Maglietta being assaulted by a member of the Bloods Street Gang.

Counsel is presumed to have been effective. *See Commonwealth v. Brooks*, 839 A.2d 245, 248 (Pa. 2003). In order to overcome that presumption and prevail on a claim of ineffectiveness, Maglietta must establish that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for their conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that because of the act or omission in question, the outcome of the proceeding would have been different. *See id.* As is true for all petitioners, Maglietta's "failure to prove any one of the three prongs results in the failure of [his] claim." *Commonwealth v. Ousley*, 21 A.3d 1238, 1244 (Pa. Super. 2011) (citation omitted).

Maglietta first claims counsel was ineffective for failing to request an instruction on the defense of duress. In support, Maglietta alleges he was entitled to this instruction because he "testified that his actions on the day of the incident were a product of his fear which resulted from the various assaults which had been inflicted upon him [by members of the Blood Street Gang]."

- 11 -

Appellant's Brief at 14. He essentially claims that this testimony regarding the implicit threat, based on his past interactions, that his co-defendants and their gang would once again attack him if he did not participate in the assault of Victim was sufficient to establish that he acted under duress. Maglietta argues that counsel was therefore ineffective for failing to ask for the instruction on duress he expected and to which he was entitled. We agree.

"Duress is a defense to criminal culpability." *Commonwealth v. Markman*, 916 A.2d 586, 606 (Pa. 2007). Under the common law, in order to establish a duress defense, a defendant was required to show that he: 1) was subject to a present and impending threat of death or serious bodily injury; 2) had a reasonable fear that the threatened harm would be made against him; and 3) had no reasonable opportunity to escape the threatened harm except by committing the criminal act. *See Commonwealth v. DeMarco*, 809 A.2d 256, 259 (Pa. 2002). However, our Supreme Court in *DeMarco* held that the General Assembly abrogated this common law test when it enacted 18 Pa.C.S.A. § 309(a), which codifies the defense duress as follows:

> **(a) General rule.** –It is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

18 Pa.C.S.A. § 309(a).

As the **DeMarco** Court explained, in order to establish duress under Section 309(a), there must be evidence that: 1) there was use of, or threat to use, unlawful force against the defendant or another; and 2) the use of, or threat to use, unlawful force was of such a nature that a person of reasonable firmness in the defendant's situation would have been unable to resist it. **See DeMarco**, 809 A.2d at 261-262. The **DeMarco** Court explicitly clarified that this test does not include the common law's requirement that the force or threatened force needs to be of present and impending death or serious bodily injury. **See id.** (noting that the comment to Section 309 expressly states that the section liberalizes existing law requiring the coercion to be immediate).

Instead, the **DeMarco** Court continued, "the relevant inquiry under Section 309 is whether the force or threatened force was a type of unlawful force that a person of reasonable firmness *in the defendant's situation* would have been unable to resist." **See id.** at 262 (citation and brackets omitted) (emphasis in original). This inquiry rests with the trier of fact, and requires the trier of fact to determine whether an objective person of reasonable firmness would have been able to resist the threat if he was subjectively placed in the defendant's situation. **See id.** In making this determination, the trier of fact must "consider any salient situational factors surrounding the defendant at the time of the alleged duress." **Id.**

Here, the PCRA court found in the first instance that Maglietta's claim that counsel should have asked for a duress instruction lacked arguable merit.

The court recognized that a defendant is entitled to an instruction on duress where there is sufficient evidence for a jury to find in his favor. **See** PCRA Court Opinion, 3/14/22, at 22 (*citing* **Markman**, 916 A.2d at 607); **see also** **DeMarco**, 809 A.2d at 262 (holding that once a defendant presents evidence in support of a duress defense, the trial court must instruct the jury on duress). It also recognized there is arguable merit to an ineffectiveness claim when counsel fails to request a proper jury instruction. **See** PCRA Court Opinion, 3/14/22, at 22 (*citing* **Commonwealth v. Chambers**, 807 A.2d 872, 883 (Pa. 2002)).

In finding that Maglietta would not have been entitled to a duress instruction even had trial counsel requested one, the PCRA court emphasized that Maglietta did not offer any evidence that there had been a specific, direct, and explicit threat of violence made to him which coerced him into assaulting Victim. Rather, he only "offered a generalized concern or assumption that he may be assaulted if he did not participate in this assault." PCRA Court Opinion, 3/14/22, at 23. The court stated:

> The diligent research of this court has determined that virtually every pertinent duress decision of our appellate courts involves facts and/or allegations of another intentionally and directly ordering the defendant to commit a crime, under the threat of physical harm.

**Id.** at 22 (*citing* **Markman**, **DeMarco** and **Commonwealth v. Horton**, 644 A.2d 181 (Pa. Super. 1994)). In effect, the PCRA court found that Maglietta would not have been entitled to the duress instruction because he did not

present evidence that his co-defendants explicitly and specifically threatened him with the use of unlawful force if he did not participate in their beating of Victim, *i.e.* "if you do not help us beat Victim, we will beat you."

Although we agree that Maglietta did not present evidence of any such direct threat here, we do not find this to be fatal to his claim. This is because we do not agree with the PCRA court that the threat of force for purposes of the duress defense under Section 309 must necessarily be an explicit one. The PCRA court is correct that the cases it cited - ***Markman, DeMarco and Horton*** - involved explicit threats. However, there is nothing in those cases indicating that the threat of force *must* be an explicit threat, or that the threat cannot be one implied from the coercer's past conduct or other salient factors of context. Indeed, in finding there was sufficient evidence for a duress instruction in ***Markman***, the ***Markman*** Court specifically noted that the defendant, who testified she had a history of being physically abused by her co-defendant, placed her allegations of coercion on the night of the murder "in the context of a broader pattern of longstanding physical abuse." 916 A.2d at 596. As such, ***Markman*** indicates that the history one has with the alleged coercer and his past conduct is relevant to the inquiry of whether a threat was made and a duress instruction warranted.

Moreover, ***DeMarco*** instructs courts to look to the language of Section 309 to determine whether the elements of a duress defense have been established. The text of Section 309 does not require that there be a direct

and present threat made to the defendant. In fact, **DeMarco** made clear that Section 309, unlike the common law, does not require a defendant to be subject to a present threat in order to be entitled to an instruction on duress. If the threat does not need to be made contemporaneously with the incident, by logical extension, the past behavior of the coercer and the coercer's relationship with the defendant is relevant to establishing that a defendant was acting under a threat of unlawful force when he committed the underlying crime.

And **DeMarco** plainly states what Section 309 requires: a showing that the defendant was coerced into committing an offense by force or threatened force that a person of reasonable firmness in his situation would have been unable to resist. **See DeMarco**, 809 A.2d at 262-262. In evaluating whether there has been such a showing, **DeMarco** stresses that the trier of fact must consider the particular situation in which the defendant finds himself. It states: "the trier of fact should consider any salient situational factors surrounding the defendant at the time of the alleged duress" in determining whether there was a threat that a person of reasonable firmness could not resist. **Id.** at 262. Such salient situational factors may include evidence of a defendant's past abusive relationship with the coercer.

Accordingly, although the cases cited by the PCRA court involved an explicit threat, they do not mandate that the threat be explicit in order for a defendant to invoke a defense of duress. To the contrary, we find they support

a conclusion that a defendant may rely on an implicit threat based on past interactions when asserting he acted under duress. It is for the fact-finder to decide whether such an implicit threat was one where a person of reasonable firmness in the defendant's situation could have resisted. **See id.**, 18 Pa.C.S.A. § 309(a).

While not directly on point, this Court's decision in **Commonwealth v. Russell**, 473 A.2d 1383 (Pa. Super. 1984), also lends support to this conclusion. There, the appellant claimed that he feared a third party and it was this fear that coerced him to sell drugs for the third party after he had pressured the appellant to do so. The appellant argued the trial court erred by prohibiting him from introducing evidence that the third party had previously assaulted another individual who had refused to sell drugs, as this evidence was necessary to support the appellant's contention that he had sold the drugs under duress.

This Court agreed. We held that "when a defense of duress is proposed, the defendant should be permitted to present evidence of violent acts, known to the defendant, committed by the alleged intimidating figure." **Id.** at 1385. Applying that general holding to the case at hand, this Court held that the appellant was entitled to a new trial as he should have been allowed to introduce evidence of the prior assault as it was pertinent to whether he had been coerced into participating in the drug transactions. **See id.** Clearly, our Court would not have reversed and remanded for a new trial to allow the

appellant to introduce this evidence if it could not support a conclusion by the jury that the third party had coerced the appellant into selling the drugs, albeit through an implicit threat stemming from the third party's previous violent propensities and the fear that fueled in the appellant. **See also Commonwealth v. King**, 57 A.3d 607, 621 (Pa. 2012) (stating that although testimony at trial indicated the appellant's history of abuse led the appellant to fear rejection by her co-defendant, it did not indicate it led her to fear physical harm by the co-defendant, so there was therefore no threat of force which would implicate the duress defense).

The **Russell** Court noted there was little controlling precedent on the duress defense, and therefore turned to the law on self-defense to guide its disposition. Maglietta also likens his claim of duress to claims of self-defense. He essentially asserts, and we agree, that self-defense cases support his contention that the jury could have found that he was acting under duress based on his fear stemming from past interactions with his co-defendants. Maglietta cites **Commonwealth v. Watson**, which states that in cases of alleged self-defense where "there has been physical abuse over a long period of time, the circumstances which assist the court in determining the reasonableness of a defendant's fear of death or serious injury at the time of a killing include the defendant's familiarity with the victim's behavior in the past." 431 A.2d 949, 952 (Pa. 1981) (citation omitted); **see also K.B. v. Tinsley**, 208 A.3d 123, 128 (Pa. Super. 2019) (stating that past acts are

significant in determining whether a petitioner seeking a protection from abuse order had a reasonable fear of bodily injury).

In addition to the law on self-defense, we find further support for our conclusion that a defendant may rely on an implicit threat to support a duress defense from the fact that this Court has repeatedly held that the Commonwealth may rely on implicit threats to secure a conviction for terroristic threats. In **Commonwealth v. Martinez**, we reiterated that "[a]n express or specific threat is not necessary to sustain a conviction for terroristic threats." 153 A.3d 1025, 1028 (Pa. Super. 2016). Rather, courts may look to the totality of the circumstances to see whether an implicit threat had been made. **See id.** at 1029. The **Martinez** panel found that under the totality of the circumstances in that case, the appellant's question "what do you got?" in a dark alley before robbing the victim was an implied threat of force and the appellant's "words and conduct" were sufficient to sustain a conviction for terroristic threats. **Id.**; **see also Commonwealth v. Kline**, 201 A.3d 1288 (Pa. Super. 2019) (holding that the victim's testimony that the appellant made a menacing hand gesture, when placed in the context of the victim's testimony that the appellant had stared at her and engaged in stalking-like behavior on multiple occasions in the previous months, was sufficient to support the jury's verdict for terroristic threats).

Based on all the above, we conclude the PCRA court erred in finding that Maglietta needed to present evidence that he had been subjected to an explicit

and direct threat of force before he could properly submit the question of whether he had acted under duress to the jury.

Instead, we find Maglietta's testimony constituted sufficient evidence to raise a question for the trier of fact as to whether Maglietta was facing a threat of force which a person of reasonable firmness would not have been unable to resist if placed into Maglietta's situation. *See DeMarco*, 809 A.2d at 262 (clarifying that once the defendant presents evidence of duress, it is for the trier of fact to determine whether the standard in Section 309 has been met). Maglietta testified at length about his particular situation and the history he had of being assaulted and coerced by his co-defendants, and claimed this caused him to act under duress. Specifically, he averred that he had faced months of threats of repercussions should he not go along with the co-defendants, and experienced months of those threats being carried out in the form of both financial extortion and physical assaults. Maglietta testified, in effect, that it was this history and this situation which led him to reasonably fear that his co-defendants would use unlawful force against him if he did not participate in the assault of Victim. As we concluded above, the jury would not have been precluded from finding that such an implied threat, if credited, supported a duress defense under Section 309. Therefore, we find that Maglietta presented sufficient evidence to raise a question of fact for the jury as to whether he was subjected to duress, conferring on him a "*prima facie* entitlement to a jury instruction on the issue." *Markman*, 916 A.2d at 608.

As ***Markman*** makes clear, however, that does not end the inquiry as to whether Maglietta was entitled to a duress instruction under Section 309(a). This is because Section 309(b) provides an exception to the availability of a duress defense. ***See id***. That exception precludes a duress defense when the defendant "recklessly placed himself in a situation in which it was probable that he would be subjected to duress." 18 Pa.C.S.A. § 309(b). Here, the PCRA court found that, even had Maglietta presented evidence which entitled him to a duress instruction under Section 309(a), the Section 309(b) exception applied. Specifically, the PCRA court found that Maglietta had recklessly placed himself in a situation where coercion was probable by, among other things, continuing to employ his co-defendants, repeatedly failing to report his co-defendants' illegal conduct to police, and continuing to associate with his co-defendants socially. ***See*** PCRA Court, 3/14/22, at 23.

However, in all but the clearest of cases, it is for the trier of fact to determine whether the defendant acted recklessly for purposes of Section 309(b). The ***Markman*** Court elaborated:

> [A]n appellate court will only affirm a trial judge's removal of the duress issue from the jury on the basis of the recklessness exception where there can be no reasonable dispute that this exception applies. In [***Commonwealth v. Pelzer,*** 612 A.2d 407 (Pa. 1992) (plurality)], for example, the trial court refused to charge the jury on duress, holding that the Section 309(b) exception applied as a matter of law. A plurality of [the Supreme] Court agreed with that determination on the basis that the only evidence of duress at trial came from the defendant's own statement to the police, and, according to that information, during the crime the defendant left the scene entirely on multiple occasions and each time chose to return. Thus, there was no

- 21 -

room for reasonable disagreement that the defendant had voluntarily (and recklessly) placed himself in a situation in which duress was probable. ***See … DeMarco***, 570 Pa. at 275, 809 A.2d at 263 (summarizing the basis for the ***Pelzer*** plurality's conclusion, and indicating that the "evidence left no question" on the issue).

***Markman,*** 916 A.2d at 608.

The ***Markman*** Court found, however, that there was conflicting evidence as to whether the appellant in that case had acted recklessly and therefore, the question should have been reserved for the jury. We reach the same conclusion here. We acknowledge the actions of Maglietta that the PCRA court recited as supporting the court's own finding that Maglietta acted recklessly in placing himself in a position where he could be subject to duress. At the same time, Maglietta presented evidence he had attempted to alert the police of the gang's presence and activities, but feared the gang's reaction if it discovered that he had "snitched." Further, Maglietta's allegations describe a situation where the gang was physically present not only at the business he owned, but at his residence next to the business. The jury could have reasonably found that these circumstances prevented Maglietta from easily extracting himself from the duress. Therefore, given Maglietta's testimony regarding the gang's ongoing threats and assaults and the fear of the gang Maglietta maintained it had instilled in him, we are unable to say that the "evidence left no question" that Maglietta acted recklessly so as to entirely remove the issue from the jury. ***DeMarco***, 809 A.3d at 263.

Accordingly, we find that Maglietta was entitled to an instruction on the elements of duress and its recklessness exception. As such, unlike the PCRA court, we conclude there is arguable merit to Maglietta's claim that counsel's failure to request such an instruction constituted ineffective assistance.[4]

The PCRA court also concluded, however, that counsel had a reasonable basis for not requesting a duress instruction and instead, pursuing a conviction for the lesser offense of simple assault. Again, we disagree.

We begin by acknowledging the highly deferential evaluation we give to counsel's chosen strategy and the high burden Maglietta must meet in order to establish that counsel did not have a reasonable basis for their chosen strategy. Maglietta must show that having the jury instructed on the defense of duress "offered a potential for success substantially greater than the course actually pursued," which was the seeking of a simple assault conviction. *Commonwealth v. Robinson*, 278 A.3d 336, 345 (Pa. Super. 2022) (citation omitted). The question is whether counsel's decision had any reasonable basis, and this "requires an examination of whether counsel made an informed choice, which at the time the decision was made reasonably could have been

_____

[4] We recognize that *Markman* cited two cases from other jurisdictions indicating that the duress defense may be unavailable to a defendant who had voluntarily joined a gang or criminal enterprise and was then coerced to commit a crime. *See Markman*, 916 A.2d at 610 n.19. Here, the very essence of Maglietta's testimony was that he was not a member of the gang and was involuntarily coerced into participating in the assault.

considered to advance and protect the defendant's interests." *Id.* (citation omitted). "Counsel is expected to know and follow applicable law." *Id.*

Here, Maglietta essentially asserts counsel could not have had a reasonable basis for declining to request the duress instruction because that decision was based on a misunderstanding of the law on duress. It was only because counsel mistakenly thought Maglietta could not invoke a duress defense that counsel decided to pursue the strategy of attempting to secure a simple assault conviction. Maglietta essentially claims this was not a reasonable strategy, and we agree.

Counsel testified they did not ask for a duress instruction because they did not believe Maglietta was entitled to one in light of the fact that his co-defendants did not threaten Maglietta contemporaneously with the assault on Victim. However, as recounted above, *DeMarco* clarified that there is no need for there to be an impending and present threat in order for a defendant to invoke the duress defense under Section 309(a). And *DeMarco*, issued in 2002, was established law at the time of this trial.

Counsel also testified, in essence, that another reason they did not ask for a duress instruction was because they believed advancing a defense of duress would require Maglietta to admit he had committed aggravated assault. According to counsel, doing so would undercut their strategy of seeking a conviction for the lesser offense of simple assault. This reasoning, in the first instance, seems to be entirely circular, given counsel's testimony that they

pursued a strategy of seeking a simple assault conviction because of their belief that Maglietta was not entitled to a duress defense. Moreover, the entire point of the duress defense is that even if the jury found beyond a reasonable doubt that Maglietta committed an assault, it would have to find Maglietta not guilty if it also found he had acted under duress.

In any event, as counsel seemed to later concede during the hearing, Maglietta would not have had to admit he committed aggravated assault in order to pursue a duress defense. Rather, he merely would have "had to admit certain acts [the punching and the kicking] committed by him. Those acts were on the surveillance video which [Maglietta] never disputed." Appellant's Brief at 17.

Maglietta testified he committed those acts under threat from his co-defendants. Counsel decided not to request a duress charge, but only because of their mistaken beliefs that Maglietta was not entitled to such a charge and that doing so would require Maglietta to admit he had committed aggravated assault. We agree with Maglietta that this simply does not constitute a reasonable strategic basis for not requesting an instruction, which if given to and credited by the jury, would have absolved Maglietta of criminal culpability for his admitted participation in the assault of Victim. **See Robinson**, 278 A.3d at 345.

We add that this is not a situation where counsel is being held accountable for failing to predict the law. **See Commonwealth v. Todaro**,

701 A.2d 1343, 136 (Pa. 1997) (stating counsel cannot be found ineffective for failing to predict changes in the law). Counsel testified they believed Maglietta was not entitled to a duress instruction because the co-defendants did not threaten Maglietta at the time of the assault. As noted above, *DeMarco* made clear that no such present threat was needed in order for a defendant to show duress under Section 309. And to the extent counsel believed Maglietta could not pursue a duress defense because there had not been an explicit, direct threat of force,[5] our conclusion above that this is not required by Section 309 is not "new law." To the contrary, it is based on cases, and their interpretation of Section 309, which existed at the time of trial.

Turning to the prejudice prong of the ineffectiveness test, Maglietta argues that without a charge on the duress defense, he had no chance to receive the not guilty verdict he had instructed counsel that he wanted. To that end, he argues "the instructions concerning accomplice and conspiratorial liability effectively foreclosed a not guilty verdict," making "a verdict of guilty a fait accompli" in the absence of an instruction on duress. Appellant's Brief at 16, 19.

---

[5] Counsel's testimony, although not entirely clear, suggests that this was not a reason on which they based their decision not to request a duress instruction. Counsel answered "correct" to the question of whether one "could have your fear and your subjective objective belief based on your history with certain individuals prior to that date." N.T. PCRA Hearing, 8/10/2021, at 27.

In response, the Commonwealth counters that Maglietta was not prejudiced by counsel's decision to not request a duress instruction, and in fact, benefitted from it. The Commonwealth asserts Maglietta had a "better chance of being found not guilty without the duress instruction" because he was essentially able to have the jury consider the defense based upon his testimony that he feared his co-defendants without making the jury aware that it could not apply the duress defense if it found Maglietta had acted recklessly. Commonwealth's Brief at 16. We are not persuaded by the Commonwealth's argument that Maglietta has failed to show he was prejudiced by counsel's decision.

The jury heard Maglietta testify at length that he acted out of fear of his co-defendants, and the reasons for that fear. The PCRA court found that the jury obviously did not credit this testimony. *See* PCRA Court Opinion, 3/14/22, at 24. But that is not necessarily so. It is certainly true the jury may not have believed Maglietta. However, if they did in fact credit his testimony, the jury was - without being given an instruction on duress - not made aware that they could return a verdict of not guilty based on Maglietta's testimony and a defense of duress. And while the jury may have ultimately found that the defense did not apply to Maglietta because of his own recklessness, that was, as discussed above, a question for the jury to decide. Counsel's decision to not even place the question of whether Maglietta acted under duress for purposes of Section 309 to the jury, when evidence of duress was offered,

prejudiced Maglietta and, under the circumstances of this case, constituted ineffectiveness.

We therefore reverse the order of the PCRA court and remand for a new trial on the basis that counsel rendered ineffective assistance when they failed to ask for a duress defense. Given this disposition, we decline to address the remainder of Maglietta's claims of ineffectiveness.

Order reversed. Matter remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2022